289 N.J. Super. 593 (1996)
674 A.2d 634
ALFRED E. TAYLOR, PLAINTIFF-APPELLANT,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1996.
Decided April 23, 1996.
*594 Before Judges PRESSLER, WEFING and A.A. RODRIGUEZ.
*595 John P. Reilly argued the cause for appellant (Reilly & Archer, attorneys; Mr. Reilly, on the brief).
David G. Lucas, Jr. argued the cause for respondent (Wolff, Helies and Duggan, attorneys; John T. Bazzurro, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The question raised by this appeal is whether an employee who is provided with a car by his employer for his personal use as part of his compensation package and is named as an insured in the employer's policy covering that car is entitled to that policy's underinsured motorist (UIM) coverage. Under the circumstances here, we conclude that he is and that such coverage is not precluded by Aubrey v. Harleysville Ins. Companies, 140 N.J. 397, 658 A.2d 1246 (1995). Accordingly, we reverse the summary judgment dismissing the complaint of plaintiff Alfred E. Taylor against his employer's insurer, defendant National Union Fire Insurance Company of Pittsburgh, PA (National).
In 1991 plaintiff Alfred E. Taylor, then a resident of Illinois, was employed as a vice-president in charge of maintenance by Six Flags Corporation, the operators of the Great Adventure amusement parks. That position entitled him to a car for his personal use at company expense. As we understand the record, the executive employee's grade determines the value of the car to which he is entitled. The company's written practice is to lease designated cars for designated employees, all of which are insured at company expense under the National policy. In April 1991, plaintiff selected a new Buick Park Avenue, which constituted a "vehicle upgrade," namely, "an automobile which exceeds the capitalized vehicle cost for your position." By electing the upgrade, plaintiff agreed to monthly payroll deductions representing "the additional monthly lease cost to Six Flags (Park) over the capitalized vehicle cost for your position." Plaintiff also agreed that in the event of his voluntary termination of employment, he would either assume responsibility for the lease, purchase the car *596 at the lease residual value, or retain the car and pay the company the difference between the lease residual value and the fair market disposal value. There was never any question but that a full range of automobile insurance was provided to plaintiff by the company as part of the arrangement and that the upgrade election did not require plaintiff to pay any additional insurance cost himself.
In October 1991, plaintiff was transferred to the Great Adventure Park in New Jersey and moved to Jackson. In December of that year, plaintiff was rear-ended by one Adolph Phillips while he was driving the Buick home from work. He sustained serious back injuries. There was apparently no question as to Phillips's sole responsibility for the accident, and plaintiff settled his claims against Phillips for the full amount of Phillips's liability coverage, $100,000. Plaintiff's damages, however, are alleged to exceed that coverage and he looked to other available insurance benefits.
Plaintiff's household consisted of himself, his wife, and one of his adult children. In addition to the company Buick, there were two other cars in the family, his wife's Chrysler and his son's Nissan. These two cars were insured under a family automobile policy by United Services Automobile Association (USAA). That policy had liability limits of $100,000/$300,000 and UIM coverage of $100,000. Since the UIM coverage of the USAA policy did not exceed the UIM coverage of Phillips's liability policy, the USAA policy could afford plaintiff no benefits. He therefore looked to the policy National had issued to Six Flags covering the Buick.
The National policy is a voluminous and complex document covering many facets of Six Flags's operations in many states. We address the pertinent provisions of the automobile coverage, basically a business auto policy, not a garage policy, subject to numerous endorsements. First, by separate endorsements, the vehicles leased by Six Flags for its employees' personal use are expressly designated as insured automobiles, and employees who are provided with those vehicles for their personal use are expressly designated as insureds. Thus the "Employees as Insureds" *597 endorsement provides that "[a]ny employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs," the word "your" having been defined in the policy as meaning Six Flags as a corporate entity. That endorsement is supplemented by the additional endorsement entitled "Drive Other Car Coverage  Broadened Coverage for Named Individuals." The import of that endorsement is to extend the named employees'[1] full coverage in respect of the designated cars leased for them by Six Flags to their spouses, who are also designated as insureds.
The nature and scope of the various coverages provided for the employee-insureds is specified on the declarations page of the Business Auto Policy and by the pertinent endorsements. Thus, the declarations page provides for liability limits of $2,000,000 and medical payments of $10,000. Personal injury protection benefits (PIP) are not specified by dollar amount but rather the appropriate PIP endorsement as required by each separate state is referred to. As to both uninsured motorist (UM) and underinsured motorist (UIM) coverage, the declarations page, instead of stating a dollar amount, specifies "statutory limits as per endorsements." The New Jersey form of that endorsement, covering both UM and UIM, also makes no mention of dollar amounts. In all other respects the UM/UIM endorsement appears to be in the form typically used in New Jersey family automobile policies, covering the insured and the insured's resident family members, reiterating the statutory requirements of N.J.S.A. 17:28-1.1, and containing the customary subrogation, settlement and general claims provisions reviewed by Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995). See also Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988).
*598 Based on the foregoing, we think it plain that for all conceptual, practical and functional purposes, the Buick was plaintiff's car and that the National policy was his insurance, and, consequently, that there ought to be no question of his right to seek recourse against the UIM coverage of that policy. The trial judge reached the contrary conclusion relying on Aubrey, supra. We are persuaded, however, that the principles articulated by Aubrey have no applicability here.
In Aubrey, the plaintiff owned a car covered by an automobile insurance policy for which she paid. She had contracted to buy a new Toyota from Chris Koch Toyota (Koch), trading in her old car. Because of a financing problem, the deal was not consummated as planned, but Koch, believing it could arrange alternate financing for her, permitted her to retain the new car as a "loaner." Title, however, to the new car remained in Koch, and title to the old car remained in plaintiff. The new car was insured under Koch's garage policy issued by Harleysville Insurance Companies. Plaintiff sustained serious injuries while driving the new car under those circumstances. Since the UIM coverage for her old car was less than the liability coverage of the tortfeasors, plaintiff sought UIM coverage under Koch's Harleysville policy. The Supreme Court held that that coverage was unavailable to her because she was not a UIM insured under the Harleysville policy. In so concluding, the Court pointed to the policy definition of an insured for purposes of liability coverage. That definition expressly excluded customers except to the extent that a customer was either uninsured under other coverage or had other coverage in an amount less than that required by the State's financial responsibility laws. Neither exception applied to plaintiff. Finally, the Court declined to construe liberally the broader definition of an insured in the UIM endorsement, namely, anyone occupying a covered auto, by holding that under N.J.S.A. 17:28-1.1e, UIM coverage is personal to the insured. Hence, if the claimant is not a basic insured under the policy, she cannot be entitled to recourse to the UIM coverage of that policy.
*599 We read Aubrey as standing for the principle that if a person is injured while fortuitously using or occupying a vehicle covered by a policy under which the person is not a named insured, that person's UIM recourse is defined by his "own" policy and not by the policy covering the fortuitously occupied vehicle or, indeed, any other policy. That principle is certainly consistent with the Court's disapproval in Aubrey of this court's holding in Landi v. Gray, 228 N.J. Super. 619, 550 A.2d 768 (App.Div. 1988). In Landi, the plaintiff owned her own vehicle and had her own policy which provided for UIM coverage of $15,000. She was injured while a passenger in a car owned by her brother and driven by a friend. The friend had no automobile of his own and hence no insurance of his own. The brother's carrier accepted the liability responsibility since the friend was a permissive driver. Since plaintiff's "own" UIM coverage did not exceed her brother's liability coverage, it afforded her no UIM benefits. She therefore sought UIM coverage under her mother's policy as a resident related member of her mother's household. This court held that plaintiff was entitled to recover UIM benefits under her mother's policy, and that the insurer's attempt to exclude any vehicle owned by a family member which was not insured by it from its policy definition of "underinsured vehicle" constituted an improper "cutting back" of the statutory scope of uninsured motorist protection. Id. at 622, 550 A.2d 768. The Supreme Court in Aubrey, 140 N.J. at 405, 658 A.2d 1246, held, contrary to this court's conclusion in Landi, that plaintiff was not entitled to such coverage but only to "the UIM limits chosen by the insured" in her own policy.
The critical distinction between Aubrey and Landi, on the one hand, and this plaintiff, on the other, is, in our view, evident. The National policy issued to Six Flags was, for this vehicle, plaintiff's "own" insurance. He was a specifically named insured for that specific car. While it is true that the insurance was selected for him and paid for by his employer, we do not see how that fact made him any less entitled to its benefits than if he had selected and paid for it himself. Had plaintiff bought the insurance on his own rather than having it provided to him by his employer as part *600 of his compensation, there could be no question of his right to all its benefits. The National policy was no less his and no less personal to him because his employer chose and paid for it.
We add this further observation. Our own research has failed to disclose any holding among our sister states denying UIM coverage to an employee under an employer's business auto policy that includes endorsements adding the employee as the named insured of a designated covered vehicle provided the employee is injured while using that vehicle. To the contrary, that coverage is regularly and routinely afforded the employee, whether or not also extended to his family members, unless contradicted by express policy exclusions, not the case here. See generally S.C. Farm Bureau v. U.S. Fidelity & Guar., ___ S.C. ___, 465 S.E.2d 777 (App. 1995); Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92 (Colo. 1995); Liberty Mut. Ins. Co. v. Driscoll, 213 A.D.2d 646, 624 N.Y.S.2d 63 (1995); Landis v. Grange Mut. Ins. Co., 95 Ohio App.3d 422, 642 N.E.2d 679 (1994); Huebner v. MSI Ins. Co., 506 N.W.2d 438 (Iowa 1993); Ceci v. National Indem. Co., 225 Conn. 165, 622 A.2d 545 (1993); Murphy v. Milbank Mut. Ins. Co., 438 N.W.2d 390 (Minn.App. 1989); King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988).
Having concluded that plaintiff is entitled to National's UIM coverage, we must next determine the amount of that coverage, a question the trial judge did not address. As we have noted, the policy itself did not state dollar amounts. Compare Vandermeulen v. Allstate Insurance Co., 734 F. Supp. 664 (D.C.N.J. 1990) (in which the New Jersey UM/UIM endorsement of a multi-state policy provided for single coverage of $35,000). The only reference in National's policy is to "statutory limits." National argues that this means the bottom statutory limit, namely $15,000, an interpretation that it claims is consistent with its underwriting predicates. Plaintiff asserts that the phrase "statutory limits" is ambiguous because it can just as easily mean the statutory ceiling rather than the floor. Plaintiff thus argues that since the phrase is ambiguous, it must, under well-settled principles *601 of insurance policy construction, be resolved in his favor, entitling him to UIM coverage of $2,000,000, that is, equal to the liability coverage. See, e.g., Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 177-178, 607 A.2d 1255 (1992); Werner Industries, Inc. v. First State Ins. Co., 112 N.J. 30, 35, 548 A.2d 188 (1988); Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336, 495 A.2d 406 (1985); Wickner v. American Reliance Ins. Co., 273 N.J. Super. 560, 568, 642 A.2d 1046 (App.Div. 1994).
We view the matter somewhat differently. We agree with plaintiff that as a matter of ordinary parlance the phrase "statutory limits" is ambiguous because it can mean either the floor or the ceiling, i.e., either the statutory minimum or the statutory maximum. We point out, however, that in this instance, it does not appear to be ambiguous at all because there is no mandatory statutory minimum for UIM. As we noted in Longworth, supra, 223 N.J. Super. at 177, 538 A.2d 414, the statutory scheme of N.J.S.A. 17:28-1.1 is to require every automobile liability policy to provide UM coverage in the minimum amount of $15,000/$30,000. The statute does not, however, mandate the provision of UIM coverage, but only the mandatory offer of UIM coverage. No floor is specified as is the case for UM coverage. N.J.S.A. 17:28-1.1b does, however, provide a statutory ceiling for both UIM and UM coverage, namely, an amount both not greater than the liability coverage and up to at least $250,000 per person and $500,000 per accident. That ceiling is the only "statutory limit" for UIM. Allgor v. Travelers Ins. Co., 280 N.J. Super. 254, 259, 654 A.2d 1375 (App.Div. 1995). We are therefore persuaded that that ceiling is the coverage that must be deemed to have been provided by National. Consequently, we reject both defendant's contention that the coverage is $15,000/$30,000 and plaintiff's contention that it is $2,000,000.
We note defendant's argument that discovery on the statutory-limit question is not complete despite the exchange of substantial documentary and other information. Defendant does not, however, indicate with any specificity the additional relevant facts that *602 discovery might produce. We are in any case satisfied that the policy speaks for itself.
The summary judgment appealed from is reversed, and we remand for entry of judgment in plaintiff's favor consistent with this opinion.
NOTES
[1] The list of covered employees does not appear on the face of the policy, which, in the appropriate box, states only "on file with company." There is, however, no question but that plaintiff is included.