295 N.J. Super. 620 (1996)
685 A.2d 978
ROLAND COOK-SAUVAGEAU AND SUZANNE R. COOK-SAUVAGEAU, PLAINTIFFS-RESPONDENTS,
v.
THE PMA GROUP, DEFENDANT-APPELLANT, AND PRUDENTIAL PROPERTY AND CASUALTY, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1996.
Decided December 13, 1996.
*621 Before Judges LONG, SKILLMAN and A.A. RODRIGUEZ.
James P. Lisovicz argued the cause for appellant (McElroy, Deutsch & Mulvaney, attorneys; Mr. Lisovicz, of counsel and on the brief; Judith M. Marshall and Kathleen M. Quinn, on the brief).
Kenneth G. Andres, Jr. argued the cause for respondents (Segal and Andres, attorneys; Mr. Andres, of counsel; Tommie Ann Gibney, on the brief).
Randi S. Greenberg argued the cause for intervenor Prudential Property and Casualty (Law Offices of Robert A. Auerbach, attorneys; Ms. Greenberg, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*622 The question presented by this appeal is whether an employee who is injured while operating his or her employer's motor vehicle during the course of employment is entitled to the underinsured motorist (UIM) coverage provided under the employer's business automobile policy or is subject to the limits of such coverage provided under the employee's own personal automobile policy. The defendant PMA Group (PMA) admits that under the plain language of its business automobile policy UIM coverage is provided to an employee who is injured while operating the employer's motor vehicle. Nevertheless, relying upon the statement in Aubrey v. Harleysville Ins. Cos., 140 N.J. 397, 404, 658 A.2d 1246 (1995) that "UIM insurance is ... personal to the insured," PMA argues that an injured employee is only entitled to the UIM coverage provided under his or her own personal automobile policy. We reject this argument and conclude that an employee who is injured while operating an employer's motor vehicle during the course of employment is entitled to the UIM coverage provided the employee under the plain language of the standard business automobile policy.
Plaintiff Roland Cook-Sauvageau (Cook-Sauvageau) was injured on June 3, 1991, while operating a van owned by his employer, Joyce Electric, Inc., during the course of employment. The driver of the other vehicle only had $15,000 of automobile liability coverage. Joyce Electric was insured under a business automobile policy issued by PMA, which provided $1,000,000 of UIM coverage to anyone occupying a covered auto, which included Joyce Electric's employees. Cook-Sauvageau maintained a policy for his personal automobile with Prudential Property Casualty Insurance Company (Prudential), which provided $50,000 of UIM coverage.
The insurance company for the other driver involved in the accident offered its full policy limits of $15,000 to settle Cook-Sauvageau's claim. Pursuant to the procedures set forth in Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 *623 (App.Div. 1988), Cook-Sauvageau obtained PMA's authorization to accept this proposed settlement and released his claims against the tortfeasor. Thereafter, PMA sent a letter to Cook-Sauvageau's counsel, confirming that its policy was "the primary policy covering Mr. Cook-Sauvageau for this loss." Consistent with this position, PMA took a sworn statement from Cook-Sauvageau regarding his injuries and obtained his medical records. However, shortly after the Court decided Aubrey, PMA reversed its position and sent Cook-Sauvageau's counsel a letter contending that he was only entitled to the UIM coverage provided under his personal automobile policy with Prudential.
This matter was brought before the trial court on Cook-Sauvageau's complaint and application for an order to show cause why an arbitrator should not be appointed to determine the amount of UIM benefits to which he is entitled under PMA's policy. The court concluded in a written decision that "[i]t is the reasonable expectation of both employer and employee that the UIM endorsement would cover the employee when he was driving a company car." The court also noted that "when a corporate entity is the insured, the personal injury coverage can only apply to its individual employees." Consequently, the court ruled that Aubrey is not controlling and that Cook-Sauvageau is entitled to UIM benefits under the PMA policy.
PMA appeals from the judgment memorializing this decision, relying primarily upon Aubrey.[1] We granted Prudential's motion to intervene.
*624 The Legislature has mandated that insurance companies which write motor vehicle liability policies offer certain UIM coverage to their insureds. N.J.S.A. 17:28-1.1(b) provides in pertinent part that "[UIM] coverage shall be provided as an option by an insurer to the named insured up to at least ... $250,000 each person and $500,000 each accident for bodily injury ... except that the limits for ... [UIM] coverage shall not exceed the insured's motor vehicle policy limits." N.J.S.A. 17:28-1.1(e) provides in pertinent part that "[a] motor vehicle is underinsured when the sum of the limits of liability under all bodily injury ... insurance policies available to a person against whom recovery is sought for bodily injury ... is, at the time of the accident, less than the applicable limits for [UIM] coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery."
However, N.J.S.A. 17:28-1.1 only prescribes the UIM coverage which an automobile liability insurer is required to offer. Consequently, an insurance company remains free to offer broader UIM coverage than what is statutorily mandated. See Lundy v. Aetna Casualty & Sur. Co., 92 N.J. 550, 555, 458 A.2d 106 (1983) (An insurer may contract to provide uninsured motorist protection to persons other than those statutorily entitled to such coverage); Riccio v. Prudential Property & Casualty Ins. Co., 108 N.J. 493, 499, 531 A.2d 717 (1987) (The insured's "rights under a UM endorsement are governed by the contract with the UM carrier"). For example, even though N.J.S.A. 17:28-1.1 only required PMA to offer Joyce Electric $500,000 of UIM coverage, PMA elected to offer $1,000,000 of such coverage. Therefore, so long as the statutorily mandated coverage has been offered, the scope of the UIM benefits provided under an automobile liability policy is determined by the language of the policy and the reasonable expectations of the persons insured thereunder.
Aubrey v. Harleysville Ins. Cos., supra, the case upon which PMA relies in arguing that its policy does not provide UIM coverage to an employee who is injured while operating his or her *625 employer's motor vehicle, involved a rather unusual factual situation. Aubrey contracted to purchase a car from a new car dealer who retained title but permitted her to drive the car pending approval of her application for a car loan. 140 N.J. at 399, 658 A.2d 1246. While she was still waiting for this approval, Aubrey was seriously injured in an automobile accident. Id. at 400, 658 A.2d 1246. At the time of the accident, Aubrey maintained a personal automobile policy which provided $15,000 of liability coverage. Ibid. Aubrey received $40,000 from the insurers for the other drivers involved in the accident, which exceeded the $15,000 UIM coverage provided under her own policy. Ibid. Consequently, Aubrey sought recovery under the policy issued to the new car dealer, which provided $1,000,000 of UIM coverage. Although this policy excluded the car dealer's customers from liability coverage except to the extent such coverage was required by law, the UIM endorsement defined "insured" to include any person "occupying a covered vehicle," id. at 401, 658 A.2d 1246, and thus did not expressly exclude the dealer's customers from such coverage. In concluding that the dealer's policy should not be construed literally to provide $1,000,000 of UIM coverage to its customers, the Court noted that "[g]enerally speaking, courts construe insurance policies consistent with the objectively reasonable expectations of the insured." Id. at 404, 658 A.2d 1246. The Court concluded that because "Aubrey purchased UIM coverage in the amount of $15,000" under her own policy, "she could reasonably expect UIM coverage in that amount," ibid., but that she "could not reasonably have anticipated the possibility of receiving benefits under UIM endorsements issued in favor of [the dealer]," and that "[t]o allow her to recover under [the dealer's] UIM policy would distort the meaning of an insured's `reasonable expectations.'" Ibid. The Court derived further support for this conclusion from the general principle that "UIM insurance is ... personal to the insured." Ibid.
Aubrey does not stand for the proposition that only the purchaser of an automobile insurance policy may recover UIM benefits. To the contrary, Aubrey explicitly states that a purchaser of a *626 personal automobile policy "would reasonably and objectively expect that he is buying such protection" not only for himself but also for "his resident spouse." Ibid. (quoting Clegg v. New Jersey Auto. Full Underwriting Ass'n, 254 N.J. Super. 634, 640, 604 A.2d 179 (App.Div. 1992)). Although not explicitly stated in Aubrey, we have no doubt that a purchaser of a personal automobile policy also would objectively and reasonably expect that all the coverages of the policy, including UIM, would be available to any minor children residing in his or her home. In addition, we held in Market Transition Facility of N.J. v. Parisi-Lusardi, 293 N.J. Super. 471, 681 A.2d 660 (App.Div. 1996) that Aubrey does not preclude an injured party who does not own an automobile registered or principally garaged in New Jersey from enjoying the benefits of the UIM coverage provided under a policy purchased by a family member. Furthermore, the Court in Aubrey relied on the analysis in Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co., 264 N.J. Super. 251, 260, 624 A.2d 600 (App.Div. 1993), which stated that "[t]he expectation of an insured ... who purchases a policy of insurance containing UIM coverage is that he is buying protection up to the declared limits `primarily for himself' and anyone else who is insured on the same basis under the policy."
Rejecting an overly expansive reading of Aubrey similar to the one urged by PMA, we held in Taylor v. National Union Fire Ins. Co., 289 N.J. Super. 593, 674 A.2d 634 (App.Div.), certif. denied, 145 N.J. 376, 678 A.2d 716 (1996), that an employee who was injured while operating a car provided for his personal use as part of his compensation package, which was insured under the employer's business automobile policy, was entitled to the UIM benefits provided thereunder. Although the purchaser of the business automobile policy was the employer, we concluded that the injured employee was entitled to full coverage under the policy because "[h]e was a specifically named insured for that specific car." Id. at 599, 674 A.2d 634. We reached this conclusion even though the employee also maintained a personal automobile policy which provided coverage for two family automobiles.
*627 Although Cook-Sauvageau was not specifically named in Joyce Electric's business automobile policy, it is as clear in this case as it was in Taylor that the essential risk for which PMA's business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles. In fact, as the court observed in Murphy v. Milbank Mut. Ins. Co., 438 N.W.2d 390, 395 (Minn. Ct. App. 1989), "[t]he employees of an insured corporation are in actuality the objects of the corporation's automobile liability coverage." Furthermore, the UIM benefits are an integral part of this coverage. Under PMA's policy, UIM benefits are provided to any person "`occupying' a covered `auto,'" which certainly includes an employee of the insured who is injured while operating one of its vehicles during the course of employment. Although an employee's personal automobile policy also may provide UIM coverage for such an accident, the "Other Insurance" clause of the standard automobile liability policy would make the UIM coverage provided by the employer's policy "primary" and any coverage provided by the employee's personal policy only "secondary." See American Reliance Ins. Co. v. American Casualty Co., 294 N.J. Super. 238, 683 A.2d 205 (App.Div. 1996); Royal Ins. Co. v. Rutgers Casualty Ins. Co., 271 N.J. Super. 409, 638 A.2d 924 (App.Div. 1994). Consequently, it would be manifestly inconsistent with the plain language of the UIM endorsement of PMA's business automobile policy and with the reasonable expectations of both the employer and employee to deny the benefits of UIM coverage to an employee injured while operating one of the employer's vehicles during the course of employment.
This conclusion is reinforced by the fact that if the UIM endorsement of the standard business automobile policy were construed to provide coverage only to the employer, the premium paid for UIM coverage would not provide any meaningful benefit either to the employer or to its employees. When as in this case a business automobile policy is issued to a corporate employer, the actual purchaser of the policy cannot itself suffer bodily injury and thus could not maintain a claim for UIM benefits except perhaps *628 in the rather unusual situation where its collision coverage was insufficient to cover the full damages to its vehicle. On the other hand, if the UIM endorsement is construed to extend coverage to the business' employees, it provides a financial benefit not only to the employees but also to the employer. An employer which pays workers compensation benefits is subrogated to any claim its employees may have against a third party, N.J.S.A. 34:15-40, which includes a claim for UIM benefits. Stabile v. New Jersey Mfrs. Ins. Co., 263 N.J. Super. 434, 439-42, 623 A.2d 252 (App.Div. 1993).[2] Consequently, a self-insured employer may derive a direct financial benefit from its employee's receipt of UIM benefits and an employer covered by workers compensation insurance presumably could derive a comparable benefit in the form of lower premiums for such coverage.
Therefore, we conclude based on the plain language of the UIM endorsement of the PMA business automobile policy and the reasonable expectations of both the employer and employee that Cook-Sauvageau is entitled to receive UIM benefits from PMA for the injuries he suffered while operating Joyce Electric's motor vehicle during the course of his employment.
Affirmed.
NOTES
[1] Cook-Sauvageau argues not only that Aubrey does not apply to this kind of a case, but also that PMA is estopped from disclaiming coverage based on its approval of his settlement with the tortfeasor under the Longworth procedures. Since we agree with the trial court's conclusion that Cook-Sauvageau is entitled to the UIM benefits provided under the PMA policy, we have no need to consider this alternative argument. We note, however, that this issue is addressed in Barrett v. New Jersey Mfrs. Ins., 295 N.J. Super. 613, 685 A.2d 975 (App.Div. 1996), which is also being filed today.
[2] In fact, Cook-Sauvageau was served with a lien against his UIM benefits for the workers compensation benefits he has received.