688 A.2d 647

NEW JERSEY MANUFACTURERS INSURANCE COMPANY,
PLAINTIFF–RESPONDENT, v. RUTH BREEN,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 13, 1997—Decided February 19, 1997.

Before Judges HAVEY, BROCHIN and KESTIN.

*Marc C. Saperstein* argued the cause for appellant (*Davis, Saperstein & Salomon,* attorneys; *Mr. Saperstein,* on the brief).

*Brian G. Steller* argued the cause for respondent (*Connell, Foley & Geiser,* attorneys; *Mr. Steller,* of counsel; *Thomas A. Sparno,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Defendant Ruth Breen claims that she is a family member of a named insured under an automobile insurance policy issued by plaintiff New Jersey Manufacturers Insurance Company and that she is therefore entitled to underinsured motorist coverage. The insurer disclaimed. The Law Division entered summary judgment sustaining the disclaimer on the basis of *Aubrey v. Harleysville Insurance Companies,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995). We hold that *Aubrey,* insofar as it voids the underinsured motorist coverage that New Jersey automobile policies containing that coverage purport to extend to family members of named insureds, should be given only prospective effect.

Ms. Breen was seriously injured in a motor vehicle accident that occurred on February 7, 1991, while she was driving her own automobile. Her tortfeasor was insured under a $100,000 automobile liability policy. Ms. Breen's automobile was insured under a policy issued by Liberty Mutual Insurance Company that included underinsured motorist coverage of $50,000. Consequently, the tortfeasor's vehicle was not underinsured if Ms. Breen's insurance policy was the yardstick. *N.J.S.A.* 17:28–1.1e; *Harmon v. New Jersey Automobile Full Ins. Underwriting Ass'n,* 268 *N.J.Super.* 434, 633 *A.*2d 1033 (App.Div.1993); *Tyler v. New Jersey Automobile Full Ins. Underwriting Ass'n,* 228 *N.J.Super.* 463, 550 *A.*2d 168 (App.Div.1988).

Ms. Breen lived in her parents' household. Her parents operated an incorporated family business which traded under the name "Cardinell Products." New Jersey Manufacturers Insurance Company insured "Cardinell Products" under a "Business Auto Policy" which included liability and underinsured motorist coverages of $500,000. "Cardinell Products" was the insured named on the declarations page of the policy, and New Jersey Manufacturers alleges in an affidavit that Ms. Breen's parents were named insureds "under the Drive Other Car Coverage Endorsement." No endorsement identified by that name is included in the copy of the policy submitted to us. Ms. Breen and her mother filed certifications alleging that Ms. Breen was an employee of Cardinell Products and that she was identified to New Jersey Manufacturers annually as a driver to be insured under the policy because she operated company vehicles.

Ms. Breen sued her tortfeasor and, with the consent of New Jersey Manufacturers, accepted $95,000 from the tortfeasor's insurer in settlement of the tort claim. *See Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988). She also asserted a claim for underinsured motorist benefits against New Jersey Manufacturers under the Cardinell Products' policy and demanded arbitration to establish her damages. New Jersey Manufacturers responded to the claim and arbitrators were cho-

sen. Before the commencement of the arbitration hearing, Ms. Breen rejected a $300,000 settlement offer from New Jersey Manufacturers, electing to proceed to arbitration. The case was partially heard by the arbitrators on May 31, 1995, but was not concluded because further medical reports were to be submitted by Ms. Breen and, if necessary, by New Jersey Manufacturers. On June 8, 1995, before the arbitration proceeding was reconvened, the Supreme Court issued its opinion in *Aubrey*.

On July 11, 1995, New Jersey Manufacturers filed a complaint for declaratory judgment and obtained an order to show cause why the arbitration should not be stayed on the ground that *Aubrey* precluded Ms. Breen from recovering under the Cardinell Products policy because it was not "personal" to her. Ultimately, the arbitration was permitted to proceed, and in October 1995 an award was entered in her favor in the amount of $325,000. On March 26, 1996, after what was in substance a motion for summary judgment, the Law Division entered a judgment declaring that, by virtue of *Aubrey*, Ms. Breen was "not entitled to underinsured motorist benefits under the policy of insurance issued by [plaintiff New Jersey Manufacturers Insurance Company] to its insured, Cardinell Products. . . ."

In considering whether *Aubrey* bars Ms. Breen's claim, we view the Cardinell Products policy as if Ms. Breen's parents were named insureds. During the oral argument of the present case before our court, New Jersey Manufacturers conceded that it would have recognized Ms. Breen as an insured if *Aubrey* had not overruled *Landi v. Gray*, 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988), because it read its policy as if Ms. Breen's parents, and not merely "Cardinell Products," were named insureds. That understanding of the policy was implied by the insurer's conduct in proceeding with damage arbitration. We take the same view of the policy. Only human beings are entitled to compensation under an underinsured motorist clause. Since New Jersey Manufacturers included the coverage and presumably collected premiums for it, the policy should be interpreted as if Ms. Breen's parents were

named insureds because that must have been the reasonable expectation of the parties. *See Werner Indus. v. First State Ins. Co.*, 112 *N.J.* 30, 35, 548 *A.*2d 188 (1988). *Cf. Rosenberg v. Universal Underwriters Ins. Co.*, 217 *N.J.Super.* 249, 525 *A.*2d 349 (Law Div.1986), *aff'd on other grounds*, 224 *N.J.Super.* 638, 541 *A.*2d 246 (App.Div.), *certif. denied*, 113 *N.J.* 333, 550 *A.*2d 449 (1988); *but cf. Giambri v. Government Employees Insurance Co.*, 170 *N.J.Super.* 140, 405 *A.*2d 872 (Law Div.1979), *aff'd o.b.*, 174 *N.J.Super.* 162, 415 *A.*2d 1202 (App.Div.1980).

The following are the facts of *Aubrey* [1]. The plaintiff in that case, Theresa Aubrey, was seriously injured in a motor vehicle accident while she was driving a new automobile lent to her by the dealer from whom she had contracted to purchase it. Her automobile policy on her old car, which was still in force, included $15,000 of underinsured motorist coverage. Her two tortfeasors had policies with liability limits of $25,000 and $15,000. Consequently, they were not underinsured with reference to her policy. However, the dealer's car that Aubrey was driving at the time of the accident was insured under an automobile policy issued by The Harleysville Insurance Companies with underinsured motorist coverage of $1,000,000. As the occupant of a "covered auto" under the terms of that policy, Aubrey was an "insured" and she claimed underinsured motorist benefits.

The Law Division sustained the insurance company's denial of coverage on the ground that a "step-down" provision of the policy reduced the liability coverage available to the dealer's customers

---

[1] The rule of *Aubrey* has been construed and applied in a number of this court's published opinions. *See Aetna Cas. & Sur. Co. v. Prudential Property and Cas. Ins. Co.*, 296 *N.J.Super.* 116, 686 *A.*2d 352 (App.Div.1996); *Barrett v. New Jersey Manufacturers Ins. Co.*, 295 *N.J.Super.* 613, 685 *A.*2d 975 (App.Div.1996); *Cook–Sauvageau v. The PMA Group*, 295 *N.J.Super.* 620, 685 *A.*2d 978 (App.Div. 1996); *American Reliance Ins. Co. v. American Cas. Co.*, 294 *N.J.Super.* 238, 683 *A.*2d 205 (App.Div.1996); *Market Transition Facility v. Parisi–Lusardi*, 293 *N.J.Super.* 471, 681 *A.*2d 660 (App.Div.1996); *Taylor v. National Union Fire Ins. Co.*, 289 *N.J.Super.* 593, 674 *A.*2d 634 (App.Div.), *certif. denied*, 145 *N.J.* 376, 678 *A.*2d 716 (1996).

to \$15,000, and the "parity" provision of *N.J.S.A.* 17:28–1.1b limits underinsured motorist coverage available to an insured to the amount of the insured's liability coverage. On appeal to our court, we reversed. We held that the "step-down" clause was inapplicable to Aubrey because of its language. We also considered an argument which the insurer based on the following statutory definition of an "underinsured" motor vehicle:

A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the *motor vehicle insurance policy held by the person seeking that recovery* ....

[*N.J.S.A.* 17:28–1.1e (emphasis added).]

The insurer contended that because underinsured motorist coverage is "personal" to the insured, Aubrey's \$15,000 of underinsured motorist coverage which was included in the automobile policy on her own car was the only "motor vehicle insurance policy held by the person seeking that recovery" and therefore the only pertinent yardstick for determining whether her tortfeasors were underinsured. We rejected that argument and declared,

[A]lthough *N.J.S.A.* 17:28–1.1(e) in defining when a motor vehicle is underinsured refers to policies "held" by the person seeking UIM coverage, we construe that to include policies pursuant to which the person is an insured, regardless of who may have purchased the policy.

[*Aubrey v. Harleysville Ins. Cos.*, 274 *N.J.Super.* 237, 243, 643 *A.*2d 1043 (App.Div.1994), *rev'd,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995).]

And for that proposition, we cited *Landi v. Gray, supra,* 228 *N.J.Super.* at 623–24, 550 *A.*2d 768.

The Supreme Court granted certification and reversed. *Aubrey, supra,* 140 *N.J.* 397, 658 *A.*2d 1246. Expressly disagreeing with each of the two grounds on which we had based our decision, the Court held that Aubrey was not entitled to underinsured motorist benefits under the dealer's policy both because the "step-down" clause did apply and because, "[u]nlike the Appellate Division, we conclude that UIM coverage, which is limited to the amount contained in the insured's policy, is 'personal' to the insured." 140 *N.J.* at 403, 658 *A.*2d 1246. Of particular signifi-

cance for the present case is the Court's express disagreement with our decision in *Landi, supra,* on which, the Court noted, we had relied for our conclusion that "the statutory phrase 'held by the person seeking that recovery' . . . include[s] policies pursuant to which the person is an insured, regardless of who may have purchased the policy." 140 *N.J.* at 404, 658 *A.*2d 1246 (quoting *Aubrey,* 274 *N.J.Super.* at 243, 643 *A.*2d 1043). The Court declared, "We disagree with that statement and disapprove of the holding in *Landi.*" *Id.* at 405, 658 *A.*2d 1246. We therefore turn next to the question whether *Landi* is legally distinguishable from the present case.

The *Landi* plaintiff owned an automobile which was insured under a liability policy whose coverage was limited to $30,000 for any one accident and $15,000 for any one claimant. Her mother and brother, with whom she was living, also each owned a car. The coverage limits of plaintiff's brother's policy were the same as those of her own. Her mother's policy had liability and underinsured motorist coverage of $100,000. Plaintiff borrowed her brother's car. She permitted a friend of hers to drive it and was injured while riding in it as a passenger when he drove it into a tree. Her friend did not own a car and had no automobile liability insurance except under plaintiff's brother's policy. Plaintiff's brother's insurer paid plaintiff the full $15,000 available under his policy, but that amount was not adequate to compensate her for her injuries. The driver was not underinsured by reference to plaintiff's policy because hers also had a $15,000 limit. She therefore asserted a claim under her mother's $100,000 policy on the ground that she was insured by that policy because she was a relative of the named insured residing in the same household. Our court agreed.

The policy defining the underinsured motorist coverage under which the plaintiff in *Landi* asserted her claim contained the following exclusion:

Neither "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle . . . [o]wned by or furnished or available for the regular use of you or any family member.

[228 *N.J.Super.* at 621, 550 *A.*2d 768.]

The defendant insurer contended that by virtue of this clause the tortfeasor's vehicle, *i.e.*, the car owned by the plaintiff's brother and driven by her friend, could not be an "underinsured motor vehicle" because it was "owned by ... [plaintiff's] family member." *Ibid.* Our court rejected that contention on the ground that, once an insured had purchased underinsured motorist insurance, *N.J.S.A.* 17:28–1.1b and –1.1e prohibited the insurer from reducing the scope of coverage as it sought to do by the quoted exclusion. The Supreme Court's *Aubrey* opinion quoted the exclusion, but did not disagree with this court's holding that the exclusion was void. We conclude, therefore, that the exclusion from the definition of "uninsured motorist" was immaterial to the Supreme Court's rejection of our holding.

For purposes of Ms. Breen's appeal in the present case from what was in essence an order for summary judgment, we are required to assume that she was an employee of Cardinell Products at the time of her accident. *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995). Several decisions of our court have held that underinsured motorist coverage which is extended to an insured because he or she is an employee of the named insured is "personal" within the meaning of *Aubrey* and, therefore, valid as written. *See Taylor v. National Union Fire Ins. Co.,* 289 *N.J.Super.* 593, 674 *A.*2d 634 (App.Div.), *certif. denied,* 145 *N.J.* 376, 678 *A.*2d 716 (1996). *Cf. Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 685 *A.*2d 978 (App.Div.1996). These decisions are consistent with *Aubrey's* approval, 140 *N.J.* at 404, 658 *A.*2d 1246, of *Prudential Property & Casualty Insurance Co. v. Travelers Insurance Co.,* 264 *N.J.Super.* 251, 624 *A.*2d 600 (App.Div.1993), where we held that a police officer injured while on duty in an automobile owned by his employer was entitled to have his claim for underinsured motorist benefits paid, either in whole or in part, under his employer's insurance policy. *See also Clegg v. New Jersey Automobile Full Underwriting Association,* 254 *N.J.Super.* 634, 604 *A.*2d 179 (App. Div.1992), also approved by *Aubrey,* 140 *N.J.* at 404, 658 *A.*2d

1246, where we held that the named insured's wife, who apparently did not own a car in her own name, was entitled to underinsured motorist benefits under her husband's policy. In the present case, however, unlike *Prudential, supra,* and *Taylor, supra,* the terms of the insuring agreement do not extend underinsured motorist coverage to employees other than those expressly named in the policy. Certifications by Ms. Breen and her mother allege that her name was submitted to New Jersey Manufacturers annually for inclusion in the policy as a named insured. In view of our holding that *Aubrey* has only a prospective effect on the validity of the underinsured motorist coverage extended to a family member of a named insured, a remand to determine whether Ms. Breen is a named insured is unnecessary.

If Ms. Breen's parents are treated as the named insureds and her allegation that she was an employee of Cardinell Products is disregarded, the material facts of the present case are identical to those facts of *Landi* which were material to the Supreme Court's overruling of our *Landi* holding. Both the *Landi* plaintiff and the defendant here owned insured automobiles, but were not entitled to underinsurance benefits under their own policies because their coverage limits were no greater than the liability insurance of the tortfeasor from whom they had obtained damages. Both claimed to be underinsured by reference to an automobile policy with higher limits purchased by a parent living in the same household. Since the Supreme Court ruled expressly that we were wrong in holding that the plaintiff in *Landi* was entitled to underinsured motorist coverage under the *Landi* plaintiff's mother's policy, we conclude that we would be wrong if we held that Ms. Breen is entitled to underinsured motorist coverage under the Cardinell Products policy on the ground that she lived with her parents.

By overruling our *holding* in *Landi, Aubrey* has effected a substantial change in the law. The form used for underinsured motorist coverage is prescribed by the New Jersey Department of Insurance. *See New Jersey Insurance Bulletins and Related Materials,* Bulletin 88–08 (December 12, 1988). The underinsured

motorist coverage language in the present case, which is consistent with the prescribed form, says:

> We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured or underinsured motor vehicle. The damages must result from bodily injury sustained by the insured, or property damage caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured or underinsured motor vehicle.

"Insured" as used in this endorsement means:

> 1. You or any family member.
>
> 2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
>
> 3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

"Family member" is defined as

> a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

The records in the spate of cases which have come before our court since the *Aubrey* decision indicate that prior to that decision, the companies issuing automobile insurance interpreted their policies consistently with the quoted language to mean that if they included underinsured motorist coverage, the coverage was extended both to the named insureds and to their family members.

Since the insurers' potential liabilities under the coverage as they understood it were likely to be greater than if only the named insured was entitled to underinsured motorist insurance, the insurance companies undoubtedly calculated and collected premiums based on a literal interpretation of this coverage language. Furthermore, family members living together in one household were entitled to plan their insurance purchases in reliance on the express language of their policies and, if they were aware of the case, upon our *Landi* decision. Whether or not Ms. Breen relied on the language of her parents' underinsured motorist coverage in deciding what coverage to buy for herself, it is reasonable to assume that some purchasers of automobile insurance and some agents advising them did rely.

Buyers and sellers of automobile insurance should have a reasonable opportunity to react to the *Aubrey* decision. Moreover, since the design and sale of automobile insurance is such a highly regulated industry in New Jersey, it would also be fair to assume that the Department of Insurance and, perhaps, the Legislature, may want to review and perhaps respond to *Aubrey's* change in the law.

All of these considerations convince us that we should decline to give *Aubrey* retrospective application in the present case despite the fact that *Aubrey* itself gave retrospective effect to the rule which it enunciates. First of all, insofar as we can tell from the opinions in *Aubrey,* the argument for limiting its holding to a prospective application was not raised. Secondly, and more importantly, as the Supreme Court's opinion points out, "Aubrey could not reasonably have anticipated the possibility of receiving benefits under UIM endorsements issued in favor of [the dealer]" and "[t]o allow her to recover under [the dealer's] UIM policy would distort the meaning of an insured's 'reasonable expectations.'" 140 *N.J.* at 404, 658 *A.2d* 1246. As we have indicated, those statements would not be true in the present case or in any similar case where the claimant asserts underinsured motorist coverage by virtue of his or her status as a family member of a named insured. Thirdly, the substantial change in the law was not effected by the narrow ruling of *Aubrey,* but by the Court's express disapproval of our holding in *Landi;* it is that aspect of the Supreme Court's decision which may frustrate the probable intentions of named insureds and disappoint the reasonable coverage expectations of their family members. Consequently, the reasons for prospective application are substantially stronger in the present case than they were in *Aubrey* itself.

█ Three conditions are required for a judicial decision to be given only prospective effect. First, the decision must overrule past precedent on which parties may have relied. Secondly, giving the rule only prospective effect must further, and not detract from, the purpose of the new rule. Thirdly, giving the

rule retrospective effect must threaten to impose substantial hardship. *Coons v. American Honda Motor Co., Inc.*, 96 *N.J.* 419, 476 *A.*2d 763 (1984), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985); *see also Montells v. Haynes,* 133 *N.J.* 282, 297–98, 627 *A.*2d 654 (1993); *cf. New Jersey Election Law Enforcement Comm'n v. Citizens to Make Mayor–Council Gov't Work,* 107 *N.J.* 380, 526 *A.*2d 1069 (1987).

All of these conditions are present in this case. *Landi* has been expressly overruled. The purpose of *Aubrey's* new interpretation of *N.J.S.A.* 17:28–1.1e is presumably to further the legislative intent of rewarding insurance buyers who protect themselves and, at the same time, encouraging automobile owners to increase the liability coverage available for potential automobile accident victims. *Bauter v. Hanover Ins. Co.*, 247 *N.J.Super.* 94, 96, 588 *A.*2d 870 (App.Div.), *certif. denied,* 126 *N.J.* 335, 598 *A.*2d 893 (1991) (purpose of underinsured motorist statute is to protect the insured up to underinsured motorist coverage limits purchased); *Dickenson v. Indemnity Ins. Co.*, 276 *N.J.Super.* 72, 80, 647 *A.*2d 192 (Law Div.1994) (goal of underinsured motorist coverage is to assist victim in obtaining adequate recovery for injuries). The *Aubrey* rule can accomplish that purpose only by influencing the provisions written into insurance policies and the choices of the consumers who buy them. Some time lapse is inevitable before the decision can have its effect, and attaining that effect would not be hastened by making the decision retrospective. Finally, as we have indicated, the conduct of automobile insurers evidenced by the records in the cases generated by *Aubrey* demonstrate that they relied on the *Landi* rule, and it is likely that buyers of insurance have also relied on it. Changing that rule without allowing a period for adjustment and for changes in the policy form prescribed by the Department of Insurance would be inequitable.

We therefore conclude that insofar as *Aubrey* overrules *Landi,* the rule of *Aubrey* should not be applied to the present case. The logic of our decision suggests that *Aubrey's* overruling of *Landi*

should not apply to claims under policies issued before the date of the Supreme Court's *Aubrey* decision. However, the determination of the length of the grace period can be left to another case.

Ms. Breen contends that New Jersey Manufacturers is estopped from disclaiming coverage because she settled with her tortfeasor for $5,000 less than her tortfeasor's liability insurance limits and released her tortfeasor from any further liability in reliance on her and her insurer's mutual assumption that she was entitled to underinsured motorist coverage. *Cf. Barrett v. New Jersey Manufacturers Ins. Co., supra.* As we indicated in our explanation of our reasons for concluding that *Aubrey's* overruling of *Landi* should be given prospective effect, that assumption appears to have been shared by substantially all New Jersey automobile insurers. Undoubtedly, it was also shared by all or most attorneys representing insureds. Consequently, Ms. Breen's estoppel argument could be asserted with the same justification by all claimants who obtained the *Longworth* [2] consents of their underinsured motorist insurance carriers before *Aubrey*. We conclude, therefore, that the estoppel argument is, in substance, a restatement of the argument for prospective application of *Aubrey*. Because we base our determination on the latter ground, it is unnecessary for us to decide whether a finding of estoppel in a case such as the present one requires the party asserting estoppel to produce factual proof both of reliance and of actual detriment. We therefore refrain from deciding that question.

Ms. Breen is not entitled to an award of counsel fees pursuant to *R.* 4:42–9(a)(6). The language of the rule is clear. It authorizes the allowance of attorneys' fees only "in an action upon a liability or indemnity policy of insurance." *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:42–9(a)(6) (1996) ("Since the stated intention of this rule was to permit an award of counsel

---

[2] *Longworth v. Van Houten, supra,* 223 *N.J.Super.* at 194–95, 538 A.2d 414 (providing procedure for underinsured motorist claimants to follow when a tortfeasor makes a settlement offer).

fees only where an insurer refused to indemnify or defend in respect of its insured's third-party liability to another, it should not be extended, beyond its express terms, to permit a counsel fee award to be made to an insured who brings direct suit against his insurer to enforce casualty or other direct coverage.") An action to collect under the underinsured motorist coverage of a New Jersey automobile policy is not within the category of suits in which *R.* 4:42–9(a)(6) permits an attorney's fee to be awarded.

Among the cases on which Ms. Breen relies as support for her argument for allowance of an attorney's fee is *Miller v. New Jersey Ins. Underwriting Ass'n,* 177 *N.J.Super.* 584, 427 *A.*2d 135 (Law Div.1981). We reversed that decision's allowance of an attorney's fee. *Miller v. New Jersey Ins. Underwriting Ass'n,* 188 *N.J.Super.* 175, 193–94, 457 *A.*2d 23 (App.Div.), *certif. denied,* 94 *N.J.* 508, 468 *A.*2d 169 (1983). We said in our opinion in that case:

> We believe the question of counsel fees under circumstances such as those presented here is resolved in this court's opinion in *Kistler v. N.J. Mfrs. Ins. Co.,* 172 *N.J.Super.* 324 [411 *A.*2d 1175] (App.Div.1980), where Judge Lora commented:
>
> > To our mind, *R.* 4:42–9(a)(6) was never intended to apply to a direct monetary claim by an insured against his carrier but only to those situations in which an insured was constrained to bring suit to enforce the provisions of a liability or indemnity policy whereby the carrier was obliged to defend and indemnify. The rule refers to a policy of liability or indemnity and does not by its terms apply to direct loss by the insured, such as might be occasioned by fire, theft or collision, so as to permit a counsel fee award to an insured who brings suit against his insurer to enforce casualty-type direct coverage.
>
> *Pressler, Current N.J. Court Rules, Comment R.*4:42–9(a)(96) [at 331].
>
> To the extent that *Corcoran v. Hartford Fire Ins. Co.,* 132 *N.J.Super.* 234 [333 *A.*2d 293] (App.Div.1975), may be to the contrary, we decline to follow it, although we do not regard the issue to have been decided there. *Maros v. Transamerica Ins. Co.,* 76 *N.J.* 572 [388 *A.*2d 971] (1978), is *sui [generis],* and cannot be regarded as controlling here.

We fully agree with the decision of this court in *Miller v. New Jersey Ins. Underwriting Ass'n, supra.* In *Enright v. Lubow,* 215 *N.J.Super.* 306, 311–13, 521 *A.*2d 1300 (App.Div.), *certif. denied,* 108 *N.J.* 193, 528 *A.*2d 19 (1987), we cited several decisions on the

scope of *R.* 4:42–9(a)(6) [3], noted the conflict, and explained our adherence to a decision to deny counsel fees as follows:

> Our Supreme Court, mindful of the divergence of decisional law on the award of counsel fees in first party claims against insurance companies, appointed a Committee on Counsel Fee Awards on Insurance Claims to evaluate the problem. The Committee, in its report published in the *New Jersey Law Journal,* January 9, 1986, at 1, recommended not to extend *R.* 4:42–9(a)(6) to permit an insured to recover counsel fees in successful litigation against insurance carriers on first party claims on insurance policies. *N.J.L.J., supra,* at 8. The Supreme Court, in accordance with the recommendation of the Committee, has not amended the Rule to explicitly permit counsel fees in first party claims on liability and indemnity policies.

*See also Goodwin v. Rutgers Cas. Ins. Co.,* 223 *N.J.Super.* 195, 538 *A.2d* 425. (App.Div.1988) (suit under uninsured motorist coverage is neither an action on a liability nor an indemnity policy within the meaning of *R.* 4:42–9(a)(6)).

The judgment appealed from is reversed and this case is remanded to the Law Division for further proceedings consistent with this opinion.

---

[3] Cases holding the rule to be inapplicable to direct actions brought by the insured against his carrier to enforce coverage:

*Vesley v. Cambridge Mut. Fire Ins. Co.,* 189 *N.J.Super.* 521, 461 *A.2d* 162 (App.Div.1981) (suit for fire casualty loss under a homeowner's policy—no counsel fees), *affirmed by an equally divided Court,* 93 *N.J.* 323, 460 *A.2d* 1057 (1983); *Ellmex Const. Co., Inc. v. Republic Ins. Co.,* 202 *N.J.Super.* 195, 494 *A.2d* 339 (App.Div.1985) (action on a builder's risk policy for loss incurred by vandalism—no counsel fees), *certif. denied,* 103 *N.J.* 453, 511 *A.2d* 639 (1986); *Meier v. New Jersey Life Ins. Co.,* 195 *N.J.Super.* 478, 489, 480 *A.2d* 919 (App.Div.1984) (direct action on a life insurance policy by the owner and beneficiary—no counsel fees), *aff'd on other grounds,* 101 *N.J.* 597, 503 *A.2d* 862 (1986); *Miller v. New Jersey Ins. Underwriting Ass'n, supra,* 188 *N.J.Super.* at 193–94, 457 *A.2d* 23 (direct action upon a fire insurance policy—no counsel fees).

Cases awarding counsel fees in a direct action by an insured against the insurance carrier:

*Maros v. Transamerica Ins. Co.,* 76 *N.J.* 572, 579, 388 *A.2d* 971 (1978) (counsel fees permissible on appeal and appellate court should consider the "debatability of the statutory construction issue as well as the comparatively small amount of the claim involved" in making its determination whether to award fees); *Corcoran v. Hartford Fire Ins. Co.,* 132 *N.J.Super.* 234, 333 *A.2d* 293 (App.Div.1975) (direct action on a homeowner's insurance policy for the loss of a diamond ring—counsel fee award upheld).