696 A.2d 105

GENERAL ACCIDENT INSURANCE COMPANY, PLAINTIFF–RE-SPONDENT, v. CNA INSURANCE COMPANY, DEFENDANT–APPELLANT, AND SHELDON ROGERS, DEFENDANT–RE-SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1997—Decided July 15, 1997.

Before Judges PAUL G. LEVY and BRAITHWAITE.

*James J. Kinneally, III* argued the cause for appellant (*Lynch Martin* attorneys; *Mr. Kinneally,* of counsel; *Karl P. Kemm,* on the brief).

*Elliott Abrutyn* argued the cause for respondent General Accident Ins. Co. (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Mr. Abrutyn,* of counsel; *Warren Usdin,* on the brief).

*Norman M. Hobbie* argued the cause for respondent Sheldon Rogers (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Hobbie,* of counsel; *Edward C. Bertucio, Jr.,* on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

On November 1, 1992, Sheldon Rogers was employed by Garden Irrigation, a closely held corporation, all of whose stock was owned by Rogers and his wife. He was injured in a motor vehicle accident while driving a 1991 Lexus automobile owned by Garden Irrigation. At the time of the accident, he was using the Lexus for personal, as opposed to employment related, purposes. The tortfeasor, a New York taxicab corporation, settled with Rogers by paying the limits of its liability insurance policy, $15,000. Rogers alleges his injuries are severe and extensive, requiring surgery for a total knee replacement, followed by rehabilitation and convalescence. He seeks full compensation for past, present and future pain, suffering and disability. Since the tortfeasor's settlement did not provide that full compensation, Rogers looked for other insurance coverage.

Rogers and his wife were "named insureds" of a personal automobile policy issued by Continental Casualty Company (incorrectly impleaded as CNA Insurance Company). The only motor vehicle scheduled as a covered auto under the Continental policy was a 1989 BMW automobile. This policy included underinsured motorist benefits (UIM) with a limit of $500,000.

Garden Irrigation was the "named insured" of a business automobile policy issued by General Accident Insurance Company. Among the vehicles listed on the "schedule of covered autos you own" was the 1991 Lexus. The General Accident policy provided UIM coverage up to $1,000,000.

Rogers demanded UIM benefits from both insurance companies, but each declined, pointing to the other as the responsible insurer. General Accident admits that the UIM endorsement in its policy "can be read as making insureds of those occupying the General Accident insured vehicle at the time of the accident." Both policies contain "other insurance" clauses providing primary coverage for an accident involving the insured vehicle and excess coverage for accidents where the insured person was not involved with the insured vehicle. General Accident acknowledged it is the primary insurer for UIM benefits according to the plain meaning of the "other insurance" clauses.

However, General Accident considered that its policy provisions, providing UIM coverage for occupants of vehicles not designated as "named insureds" for UIM purposes, were invalidated by *Aubrey v. Harleysville Insurance Companies,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995). Claiming that "the right to recover UIM benefits is measured against the claimant's personal policy" pursuant to *Aubrey,* it declined to arbitrate Rogers' UIM claim. Instead, it filed the within action for declaratory judgment against Continental and Rogers. When the two insurance companies made cross-motions for summary judgment, the motion judge held for General Accident and ordered Continental to provide UIM coverage to Rogers. Continental appeals and we reverse and remand for arbitration between Rogers and General Accident.

Rogers, while not filing a cross-appeal, joins in Continental's appeal and asks us to hold the General Accident policy "primary for UIM coverage" and the Continental policy secondary and excess thereto. We agree with that contention because we conclude that *Aubrey* does not limit UIM recovery to Rogers' personal auto policy. Without its disclaimer based on *Aubrey*, General Accident acknowledges it is the primary insurer for any UIM benefits to which Rogers is entitled.

In *French v. New Jersey School Bd. Assn. Ins. Group*, 149 *N.J.* 478, 486, 694 *A.2d* 1008 (1997), our Supreme Court clarified *Aubrey*, stating that it did not intend the UIM coverage under a personal insurance policy "would be the sole criterion or litmus test for determining UIM coverage issues." The Court stated that it is "simply too broad a reading" of *Aubrey* to take the position that the injured party's personal insurance policy was to be used to ascertain the threshold eligibility for UIM status and that the personal policy would be "the only UIM policy that the injured person has resort to once that threshold test is met." *Ibid.*

Here, the motion judge read *Aubrey* strictly, and considered it to limit UIM coverage to the application of the injured party's personal auto policy. The judge found that Rogers was at most an "additional insured" under the General Accident policy but not a "named insured," and therefore Rogers could only reasonably expect UIM coverage under the personal policy he had purchased from Continental. However, in *Taylor v. Nat'l Union Fire Ins. Co.*, 289 *N.J.Super.* 593, 674 *A.2d* 634 (App.Div.), *certif. denied*, 145 *N.J.* 376, 678 *A.2d* 716 (1996), we held UIM benefits were available under the employer's business auto policy to a person injured while driving a car provided by his employer as part of his compensation package, even though the employee had a personal auto policy covering his family vehicles.

In a later case, we considered the plight of an employee injured during the course of employment while driving his employer's van. *Cook–Sauvageau v. PMA Group*, 295 *N.J.Super.* 620, 685 *A.2d* 978

(App.Div.1996). Under those circumstances, we said it was as clear there as in *Taylor* that "the essential risk for which [the] business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles." *Id.* at 627, 685 *A*.2d 978.

In *French,* the Court did not just explain what it had intended by its opinion in *Aubrey.* It went so far as to express the belief that once an injured person met the threshold test of being underinsured, "the Legislature clearly would have intended that the policy 'held' by a claimant under *N.J.S.A.* 17:28–1.1 e would include a policy provided for the claimant by an employer even if coverage under the personal policy of the employee were not triggered." *French v. New Jersey School Bd. Ass'n. Ins. Group, supra,* 149 *N.J.* at 489, 694 *A*.2d 1008.

Here General Accident acknowledges that except for its interpretative application of *Aubrey,* Rogers was covered by its UIM endorsement as an occupant of the covered Lexus. The General Accident policy used the same standard definition of an "insured" as found in *French.*

**WHO IS INSURED**

1. You.
2. If you are an individual, any "family member".
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

In *French,* the Court observed that this language "contemplate[s] situations in which one could conceivably receive benefits under more than one UIM policy." *Id.* at 487, 694 *A*.2d 1008.

While *French* and *Cook–Sauvageau* involved persons injured during the course of employment, we believe those opinions apply as well to employees injured while driving company cars for personal reasons. The factual premise for *Taylor* was that the employee was not injured during the course of employment. We understand that Rogers was allowed the use of the Lexus for

personal use, and both he and Garden Irrigation considered the General Accident policy to apply whenever he drove a company vehicle. As noted in *French*, "an employer will often wish to insure that the injuries of employees are fully compensated." *Id.* at 493, 694 *A.*2d 1008. Additionally, when a full-time employee is involved, "the probable fair expectations and common intent of an insurance company and policyholder, absent specification to the contrary, are that the policy provide UIM coverage for employees of the business entity. . . ." *Id.* at 495, 694 *A.*2d 1008.

Therefore, we conclude that Rogers was covered by his employer's business auto policy and its $1,000,000 UIM coverage for injuries proximately caused by the collision involving his employer's vehicle and that of a statutorily uninsured tortfeasor.

We were assured at oral argument that the injuries suffered by Rogers were extensive, although probably not exceeding $500,000 in value. Having received the full limit of the tortfeasor's liability coverage, Rogers meets the UIM threshold test and the tortfeasor is considered underinsured. Therefore Rogers may pursue UIM benefits under either the General Accident or the Continental policy. *French, supra, id.* at 486, 494–95, 694 *A.*2d 1008. The statutory prohibition against stacking "multiple policies available to the insured" does not come into play because Rogers' damages will not exceed the limits of the General Accident policy. *See N.J.S.A.* 17:28–1.1(c). Since General Accident does not dispute its status as the primary carrier under the "under insurance" clause of its policy, there will be no impact on Continental because the value of Rogers' damages is well within the $985,000 available under the General Accident policy.

Reversed and remanded for arbitration of Rogers' claim for UIM benefits from General Accident.