681 A.2d 660

MARKET TRANSITION FACILITY OF NEW JERSEY, BY AND THROUGH ITS SERVICING CARRIER, AMGRO INSURANCE COMPANY AND STATE FARM INSURANCE COMPANY, PLAINTIFFS–RESPONDENTS, v. TERESA PARISI–LUSARDI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued August 13, 1996—Decided September 4, 1996.

Before Judges KLEINER and BRAITHWAITE.

*Craig R. Fishman* argued the cause for appellant (*Kotlikoff, Littlefield & Fishman*, attorneys; *Mr. Fishman*, on the brief).

*Lawrence D. Lally* argued the cause for respondent Market Transition Facility of New Jersey (*Montano, Summers, Mullen, Manuel, Owens & Gregorio*, attorneys; *Mr. Lally*, of counsel and on the brief).

*Chierici & Wright, P.C.*, attorneys for respondent State Farm Insurance Company (*Carolyn J. Kornas*, on the brief).[1]

The opinion of the court was delivered by

KLEINER, J.A.D.

■ This appeal raises a question of first impression in New Jersey: In light of the Supreme Court's decision in *Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995), may an individual, injured while driving the automobile of another, assert a claim for underinsured motorist (UIM) coverage purchased by a co-habitant family member of the injured individual, where that injured individual does not own an automobile and does not have her own UIM coverage? The motion judge who was called upon to decide this narrow issue concluded that the injured claimant's demand for underinsured coverage benefits was barred by the decision in *Aubrey*. On the claimant's appeal from that decision, we conclude that the claimant does, in fact, have an assertible claim for underinsurance benefits. We reverse the summary judgment granted to the insurer on its cross-motion and remand to the trial court for further proceedings.

---

[1] Attorneys for respondent State Farm Insurance Company submitted a consent order to the court prior to oral argument. They did not participate in oral argument.

The facts are not in dispute. On April 3, 1992, defendant Theresa Parisi–Lusardi (Lusardi), a licensed driver, resided with her paramour Vito Moles, in the home of her brother Frank J. Parisi, III (Parisi). Lusardi did not own a motor vehicle either registered in this state or principally garaged in this state and she therefore was not required to obtain automobile insurance. *See N.J.S.A.* 39:6B–3. On that date, Lusardi was operating Moles' automobile with his permission. Moles' automobile was insured under a comprehensive automobile liability insurance policy issued by State Farm Insurance Company (State Farm). Moles' policy contained an endorsement selected by Moles that provided under-insurance coverage of $100,000 per person. On that same date, Lusardi's brother, Parisi, was insured under a comprehensive automobile liability insurance policy issued by Market Transition Facility, by and through its servicing carrier, Amgro Insurance Company (Amgro). Parisi's policy contained an underinsurance coverage endorsement, selected by Parisi, providing underinsur-ance benefits of $100,000 per person. Lusardi collided with a motor vehicle owned and operated by David J. Pacuta, also insured by Amgro. Pacuta's policy provided the statutory mini-mum liability coverage of $15,000 per person/$30,000 per accident. *See N.J.S.A.* 17:28–1.1a. As a result of the injuries Lusardi sus-tained in that collision, she asserted claims against State Farm and Amgro.[2]

Amgro, on behalf of Pacuta, offered to settle Lusardi's personal injury claim for $15,000. Lusardi communicated that offer of settlement to State Farm, on behalf of Moles, and to Amgro, on behalf of Parisi. Lusardi informed both insurers of her intent to pursue a claim for underinsurance benefits. Neither insurer

---

[2] Suit was originally commenced by plaintiffs State Farm Insurance Company and Market Transition Facility, by and through its servicing carrier, Amgro Insurance Company. Both insurers sought to compel Lusardi, the named defendant, to execute medical authorizations so as to permit plaintiffs to investi-gate Lusardi's medical claims attributable to the April 3, 1992 collision. That aspect of the litigation was resolved and that issue has no bearing upon this appeal.

objected to Lusardi accepting Pacuta's settlement offer and ultimately that settlement offer was accepted.

Lusardi thereafter asserted a claim against State Farm and Amgro for underinsurance benefits under the endorsements to the policies issued to Moles and Parisi, respectively. She demanded that her underinsurance claim be submitted to arbitration, as required under the contractual terms of each insurance policy endorsement. Both insurers refused to submit Lusardi's claim to arbitration. Lusardi, utilizing the docket number assigned to the Law Division complaint initially filed, proceeded to file a motion seeking to compel both insurers to submit her underinsurance coverage claim to arbitration. While that motion was pending, the Supreme Court issued its decision in *Aubrey*. Each insurer then filed a cross-motion for summary judgment separately contending that defendant Lusardi was not entitled to underinsurance benefits. After oral argument on each defendant's cross-motion, the motion judge granted summary judgment to State Farm but reserved decision on Amgro's cross-motion for summary judgment. The motion judge thereafter issued a letter opinion granting summary judgment to Amgro. In both decisions, the motion judge exclusively relied upon *Aubrey*. Defendant immediately appealed both decisions.[3]

The UIM statute, *N.J.S.A.* 17:28–1.1e, provides,

A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

---

[3] At oral argument, we were advised by counsel that State Farm has agreed to be bound by a three-person underinsured motorist arbitration subject to the limits of the policy issued to Vito Moles under policy number 2094545–513–30. The consent order specifically provides, "The issues to be determined at the aforementioned underinsured motorist arbitration are liability and damages only, the issue of coverage for Teresa Parisi–Lusardi, under the aforementioned policy having been waived by State Farm Insurance Company."

Lusardi, as an injured claimant, first sought compensation for her injuries from Pacuta, the culpable tortfeasor, whose liability insurance provided coverage of only $15,000 per person/$30,000 per accident. Lusardi, as a "family member" of Parisi, then looked to the terms of the Amgro insurance policy issued to Parisi. The Amgro comprehensive automobile liability insurance policy provided in pertinent part:

## AGREEMENT

In return for payment of the premium and subject to all terms of this policy, we agree with you as follows:

. . . .

A.  Throughout this policy, "you" and "your" refer to:

1.  The "named insured" shown in the Declarations; and

2.  The spouse if a resident of the same household.

. . . .

## UNINSURED MOTORIST COVERAGE—NEW JERSEY

. . . .

INSURING AGREEMENT

We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" where such coverage is indicated as applicable in the Schedule or Declarations because of:

1.  "Bodily injury" sustained by an "insured" and caused by an accident; and

2.  "Property damage" caused by an accident except under paragraph 2. of the definition of "uninsured motor vehicle."

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle." We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

"Insured" as used in this endorsement means:

1.  You or any "family member."

2.  Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

In *Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995), the Supreme Court interpreted *N.J.S.A.* 17:28–1.1e:

[W]e conclude that UIM coverage, which is limited to the amount contained in the insured's policy, is "personal" to the insured. Coverage is linked to the injured person, not the covered vehicle. *Fernandez v. Selected Risks Ins. Co.*, 82 *N.J.* 236, 241, 412 *A.*2d 755 (1980). UIM coverage provides "as much coverage as the insured is willing to purchase, for his or her protection subject only to the owner's policy liability limits for personal injury and property damages to others." *Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co.*, 264 *N.J.Super.* 251, 259–60, 624 *A.*2d 600 (App.Div.1993); *see also Clegg v. New Jersey Automobile Full Underwriting Ass'n*, 254 *N.J.Super.* 634, 638, 604 *A.*2d 179 (App.Div.1992) (stating that UIM coverage is linked to insured); *Nikiper v. Motor Club of America Cos.*, 232 *N.J.Super.* 393, 399, 557 *A.*2d 332 (App.Div.) (stating that "[t]he purchase determines the amount of the coverage; the number of tortfeasors does not"), *certif. denied*, 117 *N.J.* 139, 564 *A.*2d 863 (1989).

[*Id.* at 403, 658 *A.*2d 1246.]

We consider that the factual distinctions between this matter and *Aubrey* temper the effect of the above language on this matter.

In *Aubrey*, the injured claimant had purchased her own automobile insurance, including a UIM endorsement providing coverage of $15,000 per person/$30,000 per accident. *Id.* at 404, 658 *A.*2d 1246. Aubrey was injured while operating a vehicle that she intended to purchase from Chris Koch Toyota after securing a financing arrangement. *Id.* at 399, 658 *A.*2d 1246. Aubrey contended that she was entitled to recover UIM benefits under the UIM provisions of Koch's garage policy, which provided $1,000,000 in UIM coverage.[4] Aubrey had recovered an aggregate sum of $40,000 in benefits from the liability insurance carriers of two culpable tortfeasors involved in the automobile accident that proximately caused her injuries.

In denying Aubrey's claim, the Court concluded,

---

[4] A secondary issue in *Aubrey* was the applicability of a "step down" provision in the garage policy. *Id.* at 399, 405–407, 658 *A.*2d 1246. The "step-down" provision reduced the UIM coverage available to Aubrey. We need not review that aspect of the opinion in our resolution of this appeal.

> Here, Aubrey purchased UIM coverage in the amount of $15,000. Thus, the amount of UIM coverage "held" by her, as "the person seeking recovery," was $15,000. Accordingly, she could reasonable expect UIM coverage in that amount. When she purchased her UIM coverage, Aubrey could not reasonably have anticipated the possibility of receiving benefits under UIM endorsements issued in favor of Koch. To allow her to recover under Koch's UIM policy would distort the meaning of an insured's "reasonable expectations." [5]
>
> [*Id.* at 404, 658 *A.*2d 1246.]

The exact holding in *Aubrey* is underscored by the Court's specific disapproval of a prior ruling of our court in *Landi v. Gray*, 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988). In *Landi*, the plaintiff Dawn Landi, "was named as the insured in a $15,000/$30,000 automobile liability policy insuring an automobile that *she owned*. The policy afforded her underinsured motorist coverage up to $15,000." 228 *N.J.Super.* at 623, 550 *A.*2d 768 (emphasis added) (footnote omitted). Landi borrowed her brother's motor vehicle and allowed her friend to drive while she remained a passenger. *Id.* at 620, 550 *A.*2d 768. Landi's friend lost control of the vehicle, causing Landi's injuries. *Ibid.* Landi's brother's insurer paid her the liability policy limits of $15,000. *Id.* at 620–21, 550 *A.*2d 768. As a member of her mother's household, Landi then asserted a UIM claim against her mother's UIM coverage of $100,000.[6] The trial court granted Landi's claim and we affirmed. *Id.* at 621, 624, 550 *A.*2d 768.

In *Aubrey*, the Supreme Court expressly disapproved of our holding in *Landi*. 140 *N.J.* at 405, 658 *A.*2d 1246. It also disagreed with our opinion on *Aubrey*:

> Thus, we disagree with the Appellate Division's conclusion that UIM insurance is not personal to the insured. The Appellate Division construed the statutory phrase

---

[5] The concept of "the objectively reasonable expectations of the insured" is fully discussed in *Werner Indus. v. First State Ins. Co.*, 112 *N.J.* 30, 35 548 *A.*2d 188 (1988). *Aubrey, supra,* 140 *N.J.* at 404, 658 *A.*2d 1246.

[6] The Supreme Court opinion in *Aubrey* indicates that Landi's mother's UIM coverage was $1,000,000. *Id.* at 405, 658 *A.*2d 1246. The decision in *Landi* indicates the mother's UIM coverage was $100,000. *Landi, supra,* 228 *N.J.Super.* at 621, 550 *A.*2d 768. The discrepancy is most likely due to a typographical error and has no bearing upon the result.

"held by the person seeking recovery" to "include policies pursuant to which the person is an insured, regardless of who may have purchased the policy." 274 *N.J.Super.* at 243, 643 *A.*2d 1043.

[*Id.* 140 *N.J.* at 404, 658 *A.*2d 1246.]

### The Court concluded,

The right to recover UIM benefits depends on the UIM limits chosen by the insured. Recovery does not depend on the limits of other UIM policies, such as the mother's policy in *Landi* or Koch's policy in the instant case. *See Harden v. Monroe Guaranty Ins. Co.,* 626 *N.E.*2d 814, 818 (Ind.Ct.App.1993) (holding that prospective buyer of used car could not recover under dealer's UIM endorsement because UIM insurance is not for protection of vehicles, but of persons).

[*Id.* at 405, 658 *A.*2d 1246.]

The Supreme Court also cited *Clegg v. New Jersey Auto. Full Underwriting,* 254 *N.J.Super.* 634, 604 *A.*2d 179 (App.Div.1992). In *Clegg,* Carol Clegg was operating her husband's vehicle while her friend Mary Smeltzer was a passenger in the vehicle. *Id.* at 636, 604 *A.*2d 179. Both women were seriously injured when the vehicle was struck by an underinsured culpable tortfeasor, William Kovalski. *Ibid.* Robert Clegg, the named insured who had purchased insurance coverage on the Clegg vehicle, had a UIM endorsement providing single limit UIM coverage of $500,000. *Ibid.* Smeltzer had her own policy of liability insurance on her personal vehicle and was also covered by a UIM endorsement providing single limit UIM coverage of $500,000. *Ibid.*

### In explaining the dispute, we noted,

Robert Clegg, individually and t/a Smeltzer Realty Co., is the insured named on the Declaration sheet of a policy issued by defendant Camden Fire Insurance Association ("Camden"). As we note *infra,* Carol is treated identically in the Camden policy with the named insured shown in the Declarations, because she is a spouse resident in the same household. By contrast, Smeltzer is an insured person under the Camden policy because of her status as an occupant of a covered auto. Smeltzer's own UIM coverage is written under a policy issued by defendant New Jersey Full Insurance Underwriting Association ("JUA").

The present controversy arose when the Cleggs and Smeltzer presented UIM claims to their own carriers for the full amount of their respective UIM coverages. The claims of each would exhaust their own UIM coverage. Because of proration provisions in the two policies, however, a question arose whether Smeltzer was entitled to share equally in the UIM coverage provided under the Clegg policy.

[*Id.* at 636–37, 604 *A.*2d 179.]

After discussing the contractual implications of proration as defined in the respective policies under consideration, we concluded,

> Given the discretionary nature of UIM coverage, a purchaser would reasonably and objectively expect that he is buying such protection up to the declared limits primarily for himself and his resident spouse. An intention to prefer passengers to the purchasers' own interests is, in our view, unrealistic and not objectively reasonable. For most purchasers of insurance, passengers would be but incidental beneficiaries of the UIM contract. This interpretation is borne out by the automobile insurance Buyer's Guide, mandated by *N.J.S.A.* 39:6A–23 and distributed to each prospective purchaser. The description of UIM emphasizes the personal nature of the security afforded and the apparent certainty of available benefits to the amount purchased:
>
>> When you buy uninsured motorist coverage, you are also provided coverage to protect you from those motorists who are underinsured. If you are in an accident caused by such a motorist, underinsured motorist coverage will pay damages up to the difference between your underinsured motorist coverage limit and the other driver's liability coverage limit.
>
> *N.J.A.C.* 11:3–15.6.
>
> [*Id.* at 640, 604 *A.2d* 179 (footnote omitted).]

We added in a footnote, "As noted in n. 2, *supra,* 'you' means the named insured and resident spouse, at least to the holder of a Camden policy." *Ibid.* We find this footnote to be significant.

The language of this pre-*Aubrey* opinion implies that Smeltzer would have been entitled to collect UIM benefits under the Camden policy even though she had her own UIM coverage. We recognized that Smeltzer was also a named insured under her own automobile liability insurance policy with an endorsement providing UIM coverage up to $500,000 and, moreover, that Mrs. Clegg's injuries exceeded the UIM coverage on the Clegg policy. We therefore concluded,

> To construe the policies, as JUA urges, to permit proration of benefits payable to Smeltzer operates to deny the Cleggs full benefit of the first-party coverage they were reasonably entitled to believe they had purchased. Given this construction, Smeltzer would not have "collectible" UIM insurance available from the Clegg policy, *unless* the Cleggs' own damages were less than $500,000
>
> [*Ibid.* (emphasis added).] [7]

---

[7] Obviously, had the Cleggs' injuries not been serious and had they not been entitled to their UIM limits of $500,000, under the decision in *Clegg*, Smeltzer, a

The apparent effect of *Aubrey* on *Clegg* is to render the extent of Mrs. Clegg's injuries irrelevant. Under a strict construction of *Aubrey*, Smeltzer would have been barred from asserting a claim against the Clegg's UIM provision solely by virtue of her own UIM coverage.

We also find it significant that *Aubrey* cited with approval our decision in *Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co.*, 264 *N.J.Super.* 251, 624 *A.*2d 600 (App.Div.1993). In *Prudential*, the injured claimant, Chris Tucci, was employed as a police officer by the Borough of Roselle Park (Borough). *Id.* at 253, 624 *A.*2d 600. Tucci was an insured under a personal insurance policy that contained a UIM endorsement providing coverage in the amount of $100,000. *Id.* at 254, 624 *A.*2d 600. The Borough police vehicle was insured with a UIM endorsement providing coverage in the amount of $1,000,000. *Ibid.* Tucci sustained injury when the Borough police vehicle he was operating collided with a culpable driver, Andrzej Ratkiewicz. *Id.* at 253, 624 *A.*2d 600. Ratkiewicz's automobile indemnity policy was in the amount of $15,000 per person/$30,000 per accident. *Ibid.*

The dispute in *Prudential*, not specifically relevant in this case, required us to compare uninsured motorist coverage (UM) with UIM coverage. In our discussion, we noted,

[A]though the Legislature was aware that *"multiple policies"* might provide UIM coverage, [*N.J.S.A.* 17:28–1.1(c) ], it specifically provided that to determine whether a motor vehicle was underinsured, the limits of liability for that vehicle should be compared against the UIM limits of the motor vehicle insurance policy *"held by the person seeking that recovery,"* rather than with respect to the limits of *any other policies* that may apply to the benefit of the claimant. *See, N.J.S.A.* 17:28–1.1(e).

[*Id.* at 259, 624 *A.*2d 600 (emphasis added).]

We also explained,

The expectation of an insured, such as Tucci, who purchases a policy of insurance containing UIM coverage is that he is buying such protection up to the declared

passenger, would have been permitted to recover the remaining unpaid limits under Clegg's UIM endorsement. In citing *Clegg* with approval, the Supreme Court in *Aubrey* did not reject the dicta in *Clegg.* 140 *N.J.* at 403–04, 658 *A.*2d 1246.

limits "primarily for himself" *and anyone else who is insured on the same basis under the policy.* [*Clegg, supra,*] 254 *N.J.Super.* at 640, 604 *A.*2d 179. Any other policy of insurance which affords him coverage necessarily does so on the basis of his status as a third party beneficiary of the contract of insurance between the insurer and the purchaser of the policy.

[*Id.* at 260, 624 *A.*2d 600.]

*Aubrey* also cited with approval *Nikiper v. Motor Club of America Cos.,* 232 *N.J.Super.* 393, 557 *A.*2d 332 (App.Div.), *certif. denied,* 117 *N.J.* 139, 564 *A.*2d 863 (1989). We need not review all of the essential facts of *Nikiper.* Suffice it to say, Joan Marie Nikiper (Joan) was seriously injured while a passenger in a vehicle owned, operated and insured by Gregory Nikiper, a non-culpable driver who collided with two other vehicles.[8] Gregory Nipiker's automobile insurance included an endorsement providing UIM coverage up to $100,000. The value of Joan's injuries exceeded $100,000. *Id.* at 396, 557 *A.*2d 332. The two culpable drivers, through their insurers and with a personal additional contribution from one of the culpable drivers, settled Joan's personal injury claim for $155,000. Joan contended that she was entitled to seek UIM coverage under Gregory Nikiper's insurance endorsement, since the liability limit of one of the culpable drivers was $50,000, which had been contributed to the total $155,000 settlement. *Id.* at 395, 557 *A.*2d 332. Although the trial judge granted the requested relief, we reversed. *Ibid.*

The common theme in *Aubrey, Landi, Clegg,* and *Prudential* is that each injured claimant had selected a UIM endorsement when purchasing their own policy of insurance and each UIM endorsement provided coverage less than the UIM coverage on a policy against which a claim was asserted. That common theme is absent here: plaintiff neither owned an automobile on the day she

---

[8] Our decision in *Nikiper* does not explain the relationship between Joan Nikiper, the passenger, and Gregory Nikiper, the owner and named insured. The decision also fails to include the policy language of the insurance policy purchased by Gregory and to advise whether Joan was the owner, and as such, a named insured on her own policy of insurance which may or may not have contained an optional UIM endorsement.

was injured in an automobile accident nor maintained in her name a policy of automobile liability insurance containing an endorsement providing UIM coverage.

Had plaintiff owned her own automobile, she clearly would have been required to purchase a comprehensive automobile liability policy. *See N.J.S.A.* 39:6B–3. Her prospective insurer would have been required to provide plaintiff with an option to purchase optional UIM coverage. *See N.J.S.A.* 17:28–1.1b. In turn, plaintiff would have either elected to purchase UIM coverage or she would have rejected that opportunity. Her election would have been hers, personal unto herself. In overruling *Landi, Aubrey* would dictate that conclusion. Although not expressly stated in *Aubrey,* we conclude that, had plaintiff elected not to purchase optional UIM coverage, that election would also bar her recovery of UIM benefits under Parisi's policy.

*Aubrey* left uncertain, however, whether it was intended to disqualify entitlement to UIM coverage to those individuals who, like plaintiff, do not own an automobile either registered or principally garaged in New Jersey. We think not. The issue was not raised in *Aubrey* and, as we construe that opinion, the issue does not seem to be answered therein.

In *Aubrey,* and in each case cited therein, the claimant owned an automobile and, in selecting insurance coverage, specifically elected optional UIM coverage with a specified coverage limit. The individual selection clearly allows optional UIM coverage to be deemed "personal" to the insured. *Aubrey, supra,* 140 *N.J.* at 403, 658 *A.2d* 1246. Because of that selection process, the Supreme Court disapproved *Landi,* which permitted the injured claimant with her own selected UIM coverage to seek the higher UIM coverage afforded under her mother's insurance endorsement.[9]

---

[9] Although the policy language of the mother's liability insurance policy and the UIM endorsement to that policy are not quoted within our decision in *Landi,* for the purposes of this opinion we may infer that the endorsement in *Landi* is

Likewise in *Clegg*, Smeltzer, although included within the contractual terms of the Clegg policy, was barred from recovering pro-rata with the Cleggs under their UIM endorsement to their insurance policy because she owned an automobile and had elected to purchase optional UIM coverage. This was the exact result in *Prudential*, where the claimant, Tucci, operating his employer's vehicle as a permissive user and contractually covered within the terms of the UIM endorsement issued to his employer, was barred from recovering under the provisions of that endorsement because he had opted to purchase UIM coverage as an endorsement to his own automobile insurance policy covering his private automobile.

If we view the issue from the perspective of the reasonable expectation of the insured, as instructed by *Werner Indus. v. First State Ins. Co.*, 112 *N.J.* 30, 35, 548 *A.2d* 188 (1988), we reach the same conclusion. We think it is clear that Parisi, in purchasing insurance and in electing to purchase UIM coverage, would have the reasonable expectation that, under the clear language of that endorsement, he was providing UIM coverage to himself *and* to members of his "family." As noted, Parisi's endorsement stated,

"Insured" as used in this endorsement means:

1. *You or any "family member."*

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

[ (Emphasis Added).]

Construing *Aubrey* in accord with plaintiff's contention contravenes the very specific contractual terms of the endorsement that it issued to Parisi and negates the reasonable expectation of Parisi, i.e., that members of his family, including his sister who resided in his household, would be provided with the UIM benefits he purchased to protect himself and his family members. Viewing

---

similar to the endorsement provided by Amgro to Parisi. That endorsement provides in pertinent part, " 'Insured' as used in this endorsement means: 1. You or any 'family member.' "

Lusardi as an "Insured," as defined by Amgro's contractual endorsement, we may also conclude that her reasonable expectation would be that, as Parisi's family member, she would be protected by the UIM insurance he purchased to protect his "family".[10]

*Aubrey* did not focus upon the claim of an injured party who does not own an automobile registered or principally garaged in New Jersey and who therefore has never had the opportunity to elect to purchase UIM coverage. We cannot conclude that the Supreme Court intended to exclude these individuals, such as Lusardi, from the protections afforded by UIM coverage.

Reversed and remanded for further proceedings consistent with this opinion. Amgro's motion for summary judgment should have been denied; Lusardi's motion to compel Amgro to submit her UIM coverage claim to arbitration should have been granted.[11]

---

[10] In plaintiff's brief on appeal, in response to a hypothetical argument raised by Lusardi that a seventeen-year child who is a licensed driver, who borrows the automobile of *his* insured parent, who *has elected to purchase UIM coverage*, would be denied coverage under a strict reading of *Aubrey*, plaintiff stated,

> [I]t is fairly clear that the reasonable expectation of a named insured when purchasing a private passenger automobile coverage, which would include UIM, would be to cover his immediate family. A minor child is without a doubt a member of the immediate family and has been so construed in numerous cases in this State no matter what the status of the relationship to the named insured. (citations omitted).

At oral argument, plaintiff's counsel, however, refused to concede that a *sister of a named insured is a member of the "immediate family"* of the named insured. We must reject that contention.

[11] As State Farm has by consent agreed to submit plaintiff's claim to arbitration, Amgro shall participate in that same arbitration proceeding on behalf of its insured, Parisi.

Additionally, this opinion has not considered any argument pertinent to proration of insurance based upon contractual provisions in either policy.