690 A.2d 631

COLLEEN DONATO, PLAINTIFF–RESPONDENT, v. MARKET TRANSITION FACILITY OF NEW JERSEY, SERVICED BY AMGRO, INC., AND AMGRO, INC., DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1997—Decided March 21, 1997.

Before Judges SHEBELL, PAUL G. LEVY and
BRAITHWAITE.

*Patricia W. Holden* argued the cause for appellants (*Martin, Gunn & Martin,* attorneys; *Ms. Holden* and *William J. Martin,* on the brief).

*John J. Palitto, Jr.* argued the cause for respondent.

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Defendant, Market Transition Facility of New Jersey (MTF), appeals from a summary judgment order requiring it to provide Underinsured Motorist (UIM) coverage to plaintiff, Colleen Donato, as well as the denial of its motion for summary judgment. We affirm.

On June 16, 1992, plaintiff was an occupant in a motor vehicle owned by her male domestic companion. She was injured when the vehicle of a tortfeasor struck the vehicle in which she was a passenger. It appears that at the time of the accident, although plaintiff was living with her companion, they were not married and she was not a named insured on his policy, which he had purchased from MTF. Plaintiff did not own a vehicle of her own, nor was she a named insured under any other insurance policy. The MTF policy had uninsured motorist (UM) coverage in the amount of $250,000 per person/$500,000 per accident. UIM coverage was included under the UM coverage. An "insured" for the purposes of the UIM coverage was defined as the insured himself or any family member or any other person occupying the covered auto.

The tortfeasor had coverage in the amount of $25,000 per person. The tortfeasor's insurance carrier offered to settle with plaintiff for the maximum amount of the policy. Plaintiff, pursuant to *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988), informed MTF of the settlement offer and requested that MTF indicate whether it intended to waive its subrogation rights. Also included in plaintiff's letter was the following:

Please be advised in consideration of the recent decision in *Aubrey v. The Harleysville Insurance Companies,*[1] that Colleen Donato had no policy of insurance at the time of the accident, and her affidavit of no insurance is already in your files.

In reply, MTF waived its subrogation rights and requested that plaintiff choose an arbitrator so that "we can begin to move this case toward a resolution." Plaintiff accepted the $25,000 and both parties named arbitrators. The matter was given an arbitration date, however, arbitration was delayed due to MTF's request to have plaintiff examined by an independent doctor. MTF then advised plaintiff, in a letter dated November 6, 1995, that it was denying her claim based on *Aubrey*. As a result, plaintiff filed a Complaint in the Law Division for a declaratory judgment that she was covered under the MTF policy's UIM provision. MTF filed an Answer denying liability. Both parties moved for summary judgment, and after oral argument on March 29, 1996, the judge denied MTF's motion, granted plaintiff's motion and ordered arbitration. The judge then stayed his order pending appeal. With consent of the parties, the judge deemed his orders final pursuant to *R.* 4:42–1(b).

MTF's sole argument on appeal is that under *Aubrey* it was entitled to summary judgment since the insurance policy was not "personal" to plaintiff, and therefore, she should not be permitted recover under it. We reject this argument and express our hope that the result here will highlight the confusion, unfairness, and extensive litigation that has followed *Aubrey*. *See* Anthony J. Monaco, *Underinsured Motorist Benefits Should Not Run with the Insured,* 147 *N.J.L.J.* 1104 (March 10, 1997). We implore our Supreme Court to revisit the issue, which we believe to be of constitutional dimensions.

The plaintiff in *Aubrey, supra,* was involved in a car accident while operating a vehicle owned by Chris Koch Toyota (Koch) with Koch's permission. 140 *N.J.* at 399, 658 *A.*2d 1246. She was

---

[1] *Aubrey v. Harleysville Insurance Companies,* 140 *N.J.* 397, 658 A.2d 1246 (1995).

under contract with Koch to purchase the vehicle, but was await-
ing approval of financing in order to close the sale and transfer
title. *Ibid.* Plaintiff had an automobile insurance policy with UIM
limits of $15,000 and liability limits of $15,000 per person/$30,000
per accident. *Id.* at 399–400, 658 *A.*2d 1246. She sustained
injuries as a result of an accident while driving the Koch vehicle
and settled with the insurance companies of the tortfeasors for
$15,000 and $25,000, the limits of both policies. *Id.* at 400, 658
*A.*2d 1246. Since she had recovered $40,000 under the tortfeasors'
insurance policies, she was not "underinsured," as defined by
*N.J.S.A.* 17:28–1.1e, with respect to her own policy. *Ibid.* There-
fore, she attempted to recover under Koch's insurance policy,
issued by the Harleysville Insurance Companies (Harleysville),
which had $1,000,000 of liability and UIM coverage and extended
this coverage to occupants of the vehicle. *Id.* at 400–01, 658 *A.*2d
1246.

Plaintiff filed a declaratory judgment action to establish UIM
coverage under the Harleysville policy. *Id.* at 401, 658 *A.*2d 1246.
Harleysville's cross-motion to dismiss was granted by the Law
Division. *Ibid.* We reversed and held that plaintiff was entitled to
UIM coverage. *Id.* at 402, 658 *A.*2d 1246. The Supreme Court
reversed and concluded "that UIM coverage, which is limited to
the amount contained in the insured's policy, is 'personal' to the
insured." *Id.* at 403, 658 *A.*2d 1246. The Court reasoned as
follows:

> Coverage is linked to the injured person, not the covered vehicle. UIM coverage
> provides "as much coverage as the insured is willing to purchase, for his or her
> protection subject only to the owner's policy liability limits for personal injury and
> property damages to others."
>
> [*Id.* at 403, 658 *A.*2d 1246 (citations omitted).]

The Court further reasoned that Aubrey's expectations, when she
purchased her insurance, were such that she could not have
reasonably anticipated "the possibility of receiving benefits under
UIM endorsements issued in favor of Koch." *Id.* at 404, 658 *A.*2d
1246. We do not quarrel with the ultimate outcome in *Aubrey,* as
we believe that both the "step-down" clause and the reasonable

expectation of Koch, the purchaser of the policy, militate against coverage.

However, the *Aubrey* Court declared:

The right to recover UIM benefits depends on the UIM limits chosen by the insured. Recovery does not depend on the limits of other UIM policies, such as the mother's policy in *Landi*, or Koch's policy in the instant case.

[*Id.* at 405, 658 *A.*2d 1246.]

In *Landi v. Gray*, 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div. 1988), we allowed the injured plaintiff, who had purchased insurance for herself, but was not underinsured as to her own policy, to obtain coverage from the UIM provision in her mother's insurance policy because she was a family member. *Id.* at 623–24, 550 *A.*2d 768. Landi was injured in an accident when she borrowed her brother's car and allowed a friend, who was not insured, to operate the car. *Id.* at 620, 550 *A.*2d 768. The friend lost control of the car and hit a tree. *Ibid.* Plaintiff's brother's insurance policy had liability coverage of $15,000 per person/$30,000 per accident. *Id.* at 620–21, 550 *A.*2d 768. Plaintiff had purchased auto insurance with the same liability coverage as her brother's policy and UIM coverage of $15,000. *Id.* at 623, 550 *A.*2d 768. They both lived with their mother who had purchased auto insurance in the amount of $100,000 per person/$300,000 per accident with $100,000 UIM coverage. *Id.* at 621, 550 *A.*2d 768. Plaintiff sought to recover under her mother's UIM coverage, as she was not under-insured with respect to her brother's policy. *Id.* at 621–22, 624, 550 *A.*2d 768. We held that plaintiff was entitled to recover under her mother's policy, as that was "[t]he only policy under which plaintiff is afforded underinsured motorist coverage that covers this accident...." *Id.* at 624, 550 *A.*2d 768. The *Aubrey* court considered this result inappropriate, apparently because Landi's recovery was in excess of the limits of her own UIM coverage. *Aubrey, supra,* 140 *N.J.* at 405, 658 *A.*2d 1246.

In *Aubrey, supra,* the Supreme Court relied in part on its reasoning that UIM coverage is "personal" to the insured, and is "linked" to the injured person and not the "covered" vehicle. 140 *N.J.* at 403, 658 *A.*2d 1246. The Court also supported its holding

by reference to the reasonable expectations of the "insured," but it looked only to the reasonable expectations of the injured party (Aubrey) under that person's contract of insurance, even though no issue concerning interpretation of the injured party's policy was before the Court. *Id.* at 404, 658 *A.*2d 1246. Instead, in both *Aubrey* and *Landi* the issue was whether the purchaser reasonably expected that the injured plaintiff would be covered under the purchaser's insurance contract. That contract, being unambiguous, could not constitutionally be impaired absent substantial conflict with public policy, which in these circumstances just does not appear to exist.

■ Clear language providing UIM coverage to both family members and occupants of a covered vehicle is standard in most insurance policies where the insured has purchased UIM coverage. *See New Jersey Manufacturers v. Breen,* 297 *N.J.Super.* 503, 511–12, 688 *A.*2d 647 (App.Div.1997); *Calabrese v. Selective Ins. Co.,* 297 *N.J.Super.* 423, 432–33, 688 *A.*2d 606 (App.Div.1997); *Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 622, 685 *A.*2d 978 (App.Div.1996); *Market Transition Facility v. Parisi–Lusardi,* 293 *N.J.Super.* 471, 475–76, 681 *A.*2d 660 (App.Div.1996); and *Taylor v. National Union Fire Ins. Co.,* 289 *N.J.Super.* 593, 596–97, 674 *A.*2d 634 (App.Div.), *certif. denied,* 145 *N.J.* 376, 678 *A.*2d 716 (1996). Undoubtedly, this coverage has been contemplated by both the carrier and the insurance industry, and is reflected in the premiums charged to vehicle owners. Viewed objectively, it is the consumer's reasonable expectation that the insurer will provide the coverage described in the insurance contract and paid for through premiums. We fail to see how contracts between the insurer and the insured can be limited in the manner sought by insurers in the heavy litigation following *Aubrey,* as the policy provisions are not contrary to any statutory or constitutional mandate or any established public policy. There were no allegations of that nature in *Aubrey* and there are certainly no such allegations in this case.

The facts in *Parisi–Lusardi*, a decision which distinguishes *Aubrey*, are similar to the facts of the present appeal. Theresa Parisi–Lusardi (claimant) did not own a vehicle nor did she have auto insurance. *Parisi–Lusardi*, *supra*, 293 *N.J.Super.* at 473, 681 *A.*2d 660. While operating the vehicle of her live-in companion she was in a collision with a tortfeasor. *Ibid.* Her companion had purchased an insurance policy with UIM coverage of $100,000 per person. *Ibid.* Claimant and her companion resided together in the home of claimant's brother, who also had insurance with UIM coverage of $100,000 per person. *Ibid.* The tortfeasor's insurance policy provided coverage of $15,000 per person/$30,000 per accident. *Ibid.* Claimant settled with the tortfeasor's insurance company for $15,000 and then brought a claim against both her companion's and her brother's insurance companies for UIM benefits. *Id.* at 473–74, 681 *A.*2d 660.

We examined the cases cited by the *Aubrey* Court, *id.* at 476–81, 681 *A.*2d 660, and we distinguished many of those cases from claimant's case. We stated:

> The common theme in *Aubrey, Landi, Clegg [v. New Jersey Auto. Full Underwriting Ass'n By and Through Cigna Ins. Co.*, 254 *N.J.Super.* 634, 604 *A.*2d 179 (1992)], and *Prudential [Property and Casualty Insurance Company v. Travelers Insurance Company*, 264 *N.J.Super.* 251, 624 *A.*2d 600 (1993)] is that each injured claimant had selected a UIM endorsement when purchasing their own policy of insurance and each UIM endorsement provided coverage less than the UIM coverage on a policy against which a claim was asserted. That common theme is absent here: plaintiff neither owned an automobile on the day she was injured in an automobile accident nor maintained in her name a policy of automobile liability insurance containing an endorsement providing UIM coverage.
>
> [*Id.* at 481–82, 681 *A.*2d 660.]

Since claimant had not purchased insurance, we concluded that the holding in *Aubrey* did not disqualify her from receiving UIM coverage as a family member under her brother's policy. *Id.* at 482–84, 681 *A.*2d 660. We held claimant was entitled to UIM benefits under his policy and stated:

> Construing *Aubrey* in accord with [the insurance company's] contention contravenes the very specific contractual terms of the endorsement that it issued to Parisi and negates the reasonable expectation of Parisi, i.e., that members of his family, including his sister who resided in his household, would be provided with the UIM benefits he purchased to protect himself and his family members.
>
> [*Id.* at 483, 681 *A.*2d 660.]

We further stated that it was not reasonable to conclude that the Supreme Court intended *Aubrey* to apply to this type of situation where the claimant does not have any automobile insurance. *Id.* at 484, 681 *A.*2d 660.

We have had many opportunities to distinguish *Aubrey* from the facts of other cases and have often concluded that *Aubrey* was inapplicable. *See Monaco, supra,* 147 *N.J.L.J.* 1104. In *Cook–Sauvageau, supra,* a plaintiff was injured in an accident while operating a motor vehicle owned by his employer. 295 *N.J.Super.* at 622, 685 *A.*2d 978. The business policy which covered the automobile had a UIM provision that provided $1,000,000 in coverage for anyone who occupied the vehicle, while plaintiff's policy provided $50,000 of UIM coverage. *Id.* at 622, 685 *A.*2d 978. Plaintiff had settled with the tortfeasor for $15,000. *Id.* at 622–23, 685 *A.*2d 978. Although the insurer, PMA, had originally acknowledged coverage, they denied plaintiff's claim after *Aubrey* was decided. *Id.* at 623, 685 *A.*2d 978. The Law Division reversed this denial and found that plaintiff was entitled to UIM coverage under the PMA policy. *Ibid.* We stated:

> *Aubrey* does not stand for the proposition that only the purchaser of an automobile insurance policy may recover UIM benefits. To the contrary, *Aubrey* explicitly states that a purchaser of a personal automobile policy "would reasonably and objectively expect that he is buying such protection" not only for himself but also for "his resident spouse."
>
> [*Id.* at 625–26, 685 *A.*2d 978 (citations omitted).]

We perceive that a consumer who purchases such insurance would reasonably expect that the beneficiaries represented as covered under the policy should be covered. *Aubrey* does not appear to have considered this contract right of the purchaser of insurance which covers the vehicle.

In *Calabrese, supra,* there were four people injured in a car accident, all of whom resided in the same household. 297 *N.J.Super.* at 427, 688 *A.*2d at 608. The tortfeasor had insurance of $100,000 per person/$300,000 per accident and the four plaintiffs settled with the tortfeasor for $75,000 per person or $300,000 total,

with the consent of Selective Insurance Company ("Selective"). (297 *N.J.Super.* 423, 688 *A.*2d 606). The owner of the vehicle, who was not involved in the accident, carried UIM coverage in the amount of $300,000. (297 *N.J.Super.* 423, 688 *A.*2d 606). The driver of the vehicle and her husband had purchased UIM coverage in the amount of $300,000 as well. *Ibid.* After determining that the plaintiffs were underinsured (297 *N.J.Super.* at 427, 688 *A.*2d 606), we held that the two plaintiffs who did not own automobiles and had not purchased policies were eligible to receive benefits under the automobile owner's policy. (297 *N.J.Super.* at 427–28, 688 *A.*2d 606). We explained that

> [Plaintiffs] are also covered under Marianne's policy because of their occupancy of the vehicle. We do not perceive that the holding in *Aubrey* militates against our holding that Marianne's policy covers Calabrese and Pace..... In addition, Calabrese and Pace, unlike the claimant in *Aubrey*, did not purchase or hold the insurance coverage made available to them under the "family member" coverage of the Rocchio policy.
>
> [ (297 *N.J.Super.* at 427–28, 688 *A.*2d 606)(citing *Parisi–Lusardi*, *supra*, 293 *N.J.Super.* 471, 681 *A.*2d 660).]

Again, in *Taylor, supra,* we held that *Aubrey* did not prevent the plaintiff from receiving UIM coverage. 289 *N.J.Super.* at 595, 674 *A.*2d 634. There, plaintiff was driving an automobile, leased by his employer for his personal use and insured at the company's expense, when he was injured in a car accident while driving home from work. *Id.* at 595–96, 674 *A.*2d 634. The tortfeasor's insurance company paid plaintiff $100,000, the limits of that policy. *Id.* at 596, 674 *A.*2d 634. Plaintiff's family owned two additional automobiles which were insured by United States Automobile Association and the policy covering those vehicles had UIM coverage of $100,000. *Ibid.* Therefore, plaintiff was not underinsured as to that policy. *Ibid.* However, the policy purchased by plaintiff's employer to cover the automobile he was driving had UIM coverage of $250,000 per person/$500,000 per accident. *Id.* at 600–01, 674 *A.*2d 634. We held that *Aubrey* did not bar plaintiff from coverage under his employer's policy even though he did not purchase the insurance, because as an employee he was a named insured on the policy. *Id.* at 596–600, 674 *A.*2d 634.

In the present case, plaintiff is entitled to benefits as she is underinsured according to the statutory definition. Her status as an occupant in the vehicle and the fact that MTF's policy provides UIM coverage for persons occupying the covered auto establishes contractual liability for UIM benefits. Plaintiff correctly argues that *Aubrey* cannot be construed to change the contract terms of the MTF policy. This insured chose to purchase UIM coverage in the amount of $250,000 per person/$500,000 per accident. It is also clear that he paid an additional $40 for that option.

*N.J.S.A.* 17:28–1.1 states, in pertinent part:

> e. For the purpose of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle..... A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.
>
> [*N.J.S.A.* 17:28–1.1e.]

UIM coverage is not mandatory, though it must be offered to the insured as an option when insurance is purchased. *N.J.S.A.* 17:28–1.1b. The applicable portion of the MTF policy entitled "Uninsured Motorists Coverage," reads as follows:

> A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
>
> 1. Sustained by an "insured," and
>
> 2. Caused by an accident.
>
> . . . .
>
> B. "Insured" as used in this Part means:
>
> 1. You or any "family member,"
>
> 2. *Any other person occupying "your covered auto"*
>
> 3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
>
> [Emphasis added.]

Plaintiff clearly qualifies for UIM benefits based upon the statutory definition of underinsured and MTF"s UIM policy provision. As the tortfeasor only had a $25,000 per person limit and the owner of the vehicle plaintiff occupied had $250,000 per person UIM coverage, "the sum of the limits of liability ... available to a person against whom recovery is sought [(the tortfeasor)] ... is ... less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." *N.J.S.A.* 17:28–1.1e. As an occupant of the vehicle, plaintiff qualifies under a plain reading of the UIM provision contained in the MTF policy.

It is objectively reasonable to assume that the purchaser expected that his UIM coverage would extend to an occupant of his vehicle. So also, the plaintiff, if shown the policy, would have the same expectation as no other interpretation is possible. Clearly, MTF understood that an occupant would be covered under the UIM provisions of the policy and charged accordingly. *See Breen, supra,* 297 *N.J.Super.* at 507, 688 *A.*2d 647 ("Since the insurers' potential liabilities under the coverage as they understood it were likely to be greater than if only the named insured was entitled to underinsured motorist insurance, the insurance companies undoubtedly calculated and collected premiums based on a literal interpretation of this coverage language"). Further, we have held that "so long as the statutorily mandated coverage has been offered, the scope of the UIM benefits provided under an automobile liability policy is determined by the language of the policy and the reasonable expectations of the persons insured thereunder." *Cook–Sauvageau, supra,* 295 *N.J.Super.* at 624, 685 *A.*2d 978.

■ The dilemma is inescapable that even the *Aubrey* analysis regarding the reasonable expectations of the injured claimant cannot result in a denial of UIM coverage to plaintiff, as plaintiff did not purchase insurance. The anomalous result dictated by *Aubrey* is that one who has paid for personal UIM coverage cannot collect on the UIM coverage of another, while one who has paid nothing towards the cost of UIM coverage can collect under

the policy of another in the identical circumstances. We fail to see the reasoning behind or fairness of such holdings. Nonetheless, we will not, merely for the sake of consistency, as appellant seeks, make the result here compatible with other decisions under *Aubrey* rejecting coverage. To do so would violate the constitutional rights of the insured, and his beneficiaries, to be free from impairment of their contract of insurance when no stated policy reason exists for intervention. *See State Farm v. State*, 124 *N.J.* 32, 64, 590 *A.*2d 191 (1991); *Matter of Recycling & Salvage Corp.*, 246 *N.J.Super.* 79, 100–01, 586 *A.*2d 1300 (App.Div.1991).

In view of our holding, we need not decide whether MTF may be estopped from denying UIM benefits on the basis of its earlier acceptance of plaintiff's claim. *See Barrett v. New Jersey Manufacturers Insurance*, 295 *N.J.Super.* 613, 617–20, 685 *A.*2d 975 (App.Div.1996).

Affirmed.