690 A.2d 1088

MAREK KONIECPOLSKI, PLAINTIFF, v. WORLDWIDE
INSURANCE GROUP, DEFENDANT–APPELLANT,
AND AMGRO, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 26, 1997—Decided April 1, 1997.

Before Judges SHEBELL and PAUL G. LEVY.

*Law Office of John Gerard Devlin And Associates, P.C.,* attorneys for appellant (*Louis J. Mairone,* on the brief).

*Maloof, Lebowitz, Connahan & Oleske,* attorneys for respondent (*Matthew J. Connahan,* on the letter-brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This appeal arises out of a dispute between the defendant insurance carriers, appellant, Worldwide Insurance Group ("Worldwide") and respondent, Amgro, Inc. ("Amgro"), over which of the two is obligated to provide plaintiff, Marek Koniecpolski, with underinsured motorist ("UIM") coverage. The Law Division judge held that only Worldwide was liable to provide UIM coverage. We reverse and hold that Amgro is primarily liable.

On March 31, 1994, plaintiff filed a Complaint in the Law Division against Worldwide and Amgro. He requested the court to declare "which of the two insurance companies should provide primary coverage...." Defendants filed Answers and asserted cross-claims against the other, each requesting a declaratory judgment that the other was responsible to provide primary coverage to plaintiff. On March 28, 1996, Worldwide moved for summary judgment, and Amgro filed a cross-motion for summary

judgment. In a written opinion, dated May 14, 1996, the judge held that Worldwide alone must provide UIM benefits. The damages issue was submitted to arbitration, and it was determined that plaintiff's gross damages were $35,000. Worldwide appeals.

Plaintiff was involved in an automobile accident while driving his ex-wife's automobile in Florida. His ex-wife had Amgro insurance with UIM coverage $50,000 per person/$100,000 per accident. Plaintiff was neither a named insured nor a resident spouse under the Amgro policy. Plaintiff had UIM coverage with Worldwide in the amount of $250,000 per person/$500,000 per accident. He settled with the tortfeasor's liability insurance carrier for $10,000, the maximum amount available.

The Worldwide and the Amgro policies each contain similar language pertaining to "Other Insurance:"

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, any insurance we provide with respect to a vehicle you do not own, or a vehicle owned by you or any family member which is not insured for this coverage under this policy, shall be excess over any other collectible insurance.

It is not disputed that these provisions are applicable to UIM coverage.

In holding that Amgro is not responsible to provide UIM coverage to plaintiff, the judge held that under *Aubrey v. Harleysville Ins. Companies*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995), "the plaintiff had no 'reasonable expectation' that entitles him to recover under Amgro's policy." The judge wrote:

the plaintiff is not entitled to fortuitous protection of his ex-wife's policy. In a recent appellate decision, *Aubrey* was interpreted to stand for the proposition:

We read *Aubrey* as standing for the principle that if a person is injured while fortuitously using or occupying a vehicle covered by a policy under which the person is not an insured, that person's UIM recourse is defined by his "own" policy and not by the policy covering the fortuitously occupied vehicle or, indeed, any other policy.

*Taylor v. National Union*, [289 *N.J.Super.* 593, 599, 674 *A.*2d 634 (App.Div. 1996).]

Worldwide contends, that by virtue of the "Other Insurance" clause, its coverage is only excess to Amgro's coverage. However, Amgro takes the position that *Aubrey* precludes coverage, since his ex-wife's policy is not "personal" to plaintiff.

The Supreme Court in *Aubrey, supra,* held "that UIM coverage, which is limited to the amount contained in the insured's policy, is 'personal' to the insured." 140 *N.J.* at 403, 658 *A.*2d 1246. The Court reasoned that Aubrey's expectations, when she purchased her insurance, were such that she could not have reasonably anticipated "the possibility of receiving benefits under UIM endorsements issued in favor of Koch," the car agency that owned the vehicle she was driving. *Id.* at 404, 658 *A.*2d 1246. Therefore, the Court concluded that Aubrey was not entitled to receive UIM benefits under the policy covering the vehicle she occupied. *Id.* at 403–05, 658 *A.*2d 1246. The apparent intent of *Aubrey* was to prevent an injured person from invoking the UIM benefits of the policy of another so as to receive greater UIM benefits than the injured person had purchased. *See id.* at 404–05, 658 *A.*2d 1246.

Although we have specifically disagreed with the reasoning of *Aubrey* and even questioned the constitutionality of that decision, *see Donato v. Market Transition Facility,* 299 *N.J.Super.* 37, 690 *A.*2d 631 (App.Div.1997), we are bound to abide by its holding. However, this is not a case where an injured plaintiff is attempting to get more than he/she bargained for in UIM coverage. Plaintiff's UIM coverage is actually greater than the coverage afforded under his ex-wife's policy. He is underinsured under either policy. *See N.J.S.A.* 17:28–1.1. Additionally, here it is plaintiff's insurance company, Worldwide, not the injured plaintiff, who wants the insurer of the automobile, Amgro, to be responsible for paying UIM benefits to plaintiff. Plaintiff merely wants one of the insurance companies to pay the loss determined by the arbitrators. We, therefore, again distinguish *Aubrey. See Calabrese v. Selective Insurance Co. of America,* 297 *N.J.Super.* 423, 688 *A.*2d 606 (App.Div.1997); *Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 685 *A.*2d 978 (App.Div.1996); *Market Transi-*

*tion Facility v. Parisi–Lusardi,* 293 *N.J.Super.* 471, 681 *A.*2d 660 (App.Div.1996); and *Taylor v. National Union Fire Ins. Co.,* 289 *N.J.Super.* 593, 674 *A.*2d 634 (App.Div.), *certif. denied,* 145 *N.J.* 376, 678 *A.*2d 716 (1996).

A further reason why *Aubrey* should not operate to require Worldwide to provide primary coverage is because it would effectively void the "Other Insurance" language contained in the Worldwide policy. Under the "Other Insurance" provision, plaintiff's UIM claim should be satisfied by Amgro. Since plaintiff was not driving his own vehicle, the Worldwide coverage is excess and the Amgro UIM coverage is primary. "Other Insurance" provisions, similar to the one in this case, are commonly included in insurance contracts. *See American Reliance Insurance Co. v. American Casualty Co.,* 294 *N.J.Super.* 238, 239, 683 *A.*2d 205 (App.Div.1996); *Royal Insurance Co. v. Rutgers Casualty Insurance Co.,* 271 *N.J.Super.* 409, 415, 638 *A.*2d 924 (App.Div.1994); *Prudential Property & Casualty v. Keystone Insurance,* 286 *N.J.Super.* 73, 77–79, 668 *A.*2d 92 (Law Div.1995); and *Universal Underwriters v. Atlantic Employers,* 259 *N.J.Super.* 74, 76, 611 *A.*2d 165 (Law Div.1992). We assume the *Aubrey* Court was aware of the existence of such provisions, and conclude it is not reasonable that the Court would intend such a sweeping decision without further comment. Nor should a clear provision of a contract between the insurer and the insured be abrogated so long as it is not contrary to established public policy or any statutory or Constitutional provision. *See Donato, supra,* 299 *N.J.Super.* at 43–44, 690 *A.*2d at 633–634. Therefore, we conclude that the Supreme Court did not intend its holding in *Aubrey* to void "Other Insurance" language that is commonly found in insurance contracts.

We believe this result is consistent with the *Aubrey* Court's discussion regarding the reasonable expectations of the injured person. In this case, plaintiff, by reading the plain language of the policy he purchased would have reasonably expected that, should he be injured in an accident while operating a vehicle of

another person, his policy would provide excess coverage over any other collectible coverage. Therefore, even if the Amgro policy is not "personal" to the plaintiff, his reasonable expectations would be thwarted were we to accept Amgro's arguments.

Our decisions in *American Reliance, supra,* and *Royal Insurance, supra,* support the conclusion that *Aubrey* does not affect "Other Insurance" clauses. In *Royal Insurance, supra,* the claimant was injured in an accident while driving a vehicle owned and insured by her employer. 271 *N.J.Super.* at 412, 638 *A.*2d 924. Claimant contributed $25 per month for insurance. *Ibid.* Royal Insurance ("Royal") had issued the policy to claimant's employer, which provided UIM coverage of $500,000 per accident. *Ibid.* Claimant was a named insured under another policy issued to her and her husband by Rutgers Casualty ("Rutgers") which had UIM coverage of $300,000 per accident. *Id.* at 412–13, 638 *A.*2d 924. The claimant had settled with the insurance company of the tortfeasor for $25,000, the limits of that policy. *Id.* at 412, 638 *A.*2d 924. A dispute then arose as to which policy was primary and which was excess, and we held that by virtue of the "Other Insurance" provision in the Rutgers policy, the Rutgers policy was excess and Royal was obligated to provide primary coverage. *Id.* at 415–17, 638 *A.*2d 924.

In *American Reliance, supra,* the claimant was involved in an accident while driving a vehicle owned and insured by her employer, but she did not contribute to the cost. 294 *N.J.Super.* at 239, 683 *A.*2d 205. Claimant was underinsured as to both her personal automobile policy with American Reliance and the policy issued by American Casualty to her employer. *Ibid.* As in this case, the Law Division judge held, based upon *Aubrey,* that claimant's own policy was primary, notwithstanding the "Other Insurance" provision it contained therein. *Ibid.* We reversed noting:

> There is no need, therefore, for us to grapple with the meaning and scope of *Aubrey* as was required in *Market Transition Facility of NJ v. Parisi–Lusardi* ... and *Taylor v. National Union Fire Ins. Co.* .... Unlike *Aubrey,* the circumstances here involve multiple policies that provide U.I.M. coverage because [claim-

ant] qualifies as an underinsured under those policies. It is the terms of those policies, therefore, that govern.

[<em>Id.</em> at 240, 683 <em>A.</em>2d 205.]

We, therefore, concluded that American Casualty was to provide primary coverage and American Reliance was to cover any excess. *Id.* at 240–41, 683 *A.*2d 205.

Although *Royal Insurance, supra,* is a pre-*Aubrey* case, it contains language that directly addresses the present issue:

> Finally, we recognize that underinsured motorist coverage has been characterized by some courts as being "personal to an insured", apparently because this type of insurance is acquired solely at the option of the insured and "provide[s] as much coverage as the insured is willing to purchase for his or her protection subject only to the owner's policy liability limits for personal injury and property damages to others.".... However, this characterization of underinsured motorist coverage cannot overcome the clear and unambiguous language of a policy and render the policy's "excess" clause void and unenforceable. It is fundamental that in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations, including providing whether its policy shall be primary or excess over other collectible insurance....
>
> [*Royal Insurance, supra,* 271 *N.J.Super.* at 419, 638 *A.*2d 924 (citations omitted).]

Moreover, in *American Reliance, supra,* we specifically held that *Aubrey* was inapplicable to the facts of that case. 294 *N.J.Super.* at 239, 683 *A.*2d 205. Finally, we disagree with the conclusion that *Royal Insurance* has been overruled *sub silentio* by the Supreme Court in *Aubrey.*

Amgro cites *Aetna Casualty & Surety v. Prudential Property and Casualty,* 296 *N.J.Super.* 116, 686 *A.*2d 352 (App.Div.1996) in support of its argument that it should not be required to provide primary coverage under *Aubrey.* There, claimant was injured in an accident while "fortuitously" using the car of a friend. *Id.* at 117–18, 122, 686 *A.*2d 352. He asserted a claim against both his insurance company, Prudential, and the insurer of the car he had borrowed, Aetna. *Id.* at 118, 686 *A.*2d 352. The Law Division held that, under *Aubrey,* Prudential was accountable to pay UIM benefits and we affirmed. *Id.* at 118–23, 686 *A.*2d 352. However,

in *Aetna Casualty* there is no mention of an "Other Insurance" clause. The reason Prudential, claimant's insurer, denied they were responsible for coverage was because "Aetna, the insurer of the 'host vehicle,' was primarily responsible to [the claimant]." *Id.* at 118, 686 *A.*2d 352. Prudential's denial of responsibility was not based upon an "Other Insurance" clause. Indeed, the *Aetna Casualty* court distinguished *American Reliance* on the basis that "[t]he issue presented to the court in *American Reliance* was not the extent of UIM coverage available to the claimant but which of two policies of insurance would be responsible for payment." *Id.* at 120, 686 *A.*2d 352. The court also explained: "Since [the claimant's] right to recover UIM benefits is limited by the terms of his own insurance coverage, we are not faced with the primacy issue presented to the court in *American Reliance.*" *Id.* at 123, 686 *A.*2d 352.

In *Donato, supra,* we held that *Aubrey* should not apply to deny UIM coverage to a plaintiff, as an "occupant" of a vehicle covered under a UIM provision, where she did not own an automobile and had not purchased insurance for herself. 299 *N.J.Super.* at 47–48, 690 *A.*2d at 635–636. We noted that it is the reasonable expectations of the person or entity who purchased the policy under which coverage is sought that should be considered. *Id.* at 42–43, 690 *A.*2d at 633. Using that analysis, it is apparent *Aubrey* should not be applied to negate the reasonable expectations of Worldwide and the injured claimant that the coverage provided under his policy would only be excess over of any other coverage, if he was injured in an accident while driving the vehicle of another. This is especially true since the Amgro policy contained a similar provision and surely it would have the same expectation if the situation were reversed.

We reverse and remand for further proceedings in accordance with this opinion.